[No. B057053. Second Dist., Div. Seven. Mar. 17, 1992.]

CESAR C. CANTU, Plaintiff and Appellant, v.
RESOLUTION TRUST CORPORATION et al., Defendants and
Respondents.

## COUNSEL

Cesar C. Cantu, in pro. per., for Plaintiff and Appellant.

Seyfarth, Shaw, Fairweather & Geraldson, Raymond R. Kepner, F. Scott Page, David D. Marshall, Graham & James, Don A. Proudfoot, Jr., Andrew R. Hall and Franklin R. Fraley, Jr., for Defendants and Respondents.

## OPINION

**WOODS (Fred), J.**—Appeal from a judgment of dismissal by the Los Angeles County Superior Court, the Honorable Valerie Baker, Judge Presiding, following the sustaining of demurrers without leave to amend. We affirm.

### I.

### INTRODUCTION

Appellant Cesar C. Cantu's (Cantu) first amended complaint alleges that defendants Lincoln Savings & Loan Association (Lincoln)[1] and Robin S. Symes, its former president (collectively, the Lincoln defendants), through their attorneys, Parker, Milliken, Clark, O'Hara and Samuelian and Robert A. Gutkin (collectively, the Parker defendants) improperly initiated an interpleader action by naming Cantu as a claimant.

---

[1]On March 8, 1991, Lincoln was placed in receivership and the Resolution Trust Corporation became the federal receiver for Lincoln.

Cantu alleges that the defendants tortiously prosecuted the interpleader action because (a) there were no competing claimants to the stake, and (b) they named Cantu as a claimant to the stake to create a false appearance of a controversy which did not exist, all in an effort to relieve Lincoln of funds to which it asserted no claim.

## II.

### CONTENTIONS

Cantu's appeal presents, in essence, two fundamental contentions for this court to resolve: first, whether or not the defendants properly filed the interpleader action based on a dispute between claimants, other than Cantu, concerning control of the Nosotros accounts; and, second, assuming that the defendants properly filed the interpleader action, whether or not naming Cantu as a claimant constituted malicious prosecution, abuse of process, or intentional infliction of emotional distress.

The Parker defendants contend that a review of the pleadings and the judicially noticeable documents before the superior court—including Cantu's admissions at variance with his allegations—requires, as a matter of law, that this court affirm the ruling of the trial court sustaining without leave to amend defendants' demurrer to Cantu's amended complaint and dismiss Cantu's appeal.

## III.

### PROCEDURAL AND FACTUAL SYNOPSIS

#### A. *Procedural Summary*

On or about March 8, 1989, Cantu filed an unverified complaint alleging a single cause of action for malicious prosecution. The Parker defendants answered and the Lincoln defendants demurred. At the hearing on June 15, 1989, Judge John Zebrowski presiding, the court instructed the parties to attend a mandatory settlement conference before Judge Robert Weil prior to any resolution of the demurrer. Judge Zebrowski further indicated that he would reschedule the hearing on Lincoln's demurrer should the parties fail to resolve their differences at the mandatory settlement conference.

During the July 19, 1989, mandatory settlement conference, after it became apparent that the parties could not settle the dispute, Judge Weil ordered the parties to arbitration even though the case was not yet at issue

and Judge Zebrowski had yet to rule on Lincoln's demurrer. On March 28, 1990, the parties arbitrated Cantu's claim. The arbitrator issued his decision on June 18, 1990, ruling for the defendants and awarding Cantu nothing. Cantu then requested trial de novo and, in accord with the arbitration order of the mandatory settlement conference judge, the parties attended a continuation of the mandatory settlement conference at which they again could not resolve the dispute.

Thereafter, the Lincoln defendants scheduled October 30, 1990, as the date for the hearing on the original demurrer to the complaint. Shortly before the hearing, Ed Barker, Esq., counsel for Cantu, conceded that the demurrer was well taken, and the lower court, now Judge Ronald Sohigian presiding, sustained the demurrer, but granted Cantu leave to amend his malicious prosecution cause of action. Cantu never sought leave to amend his complaint to add new causes of action. Nevertheless, although the first amended complaint reflected only minor changes to Cantu's cause of action for malicious prosecution, it set forth two entirely new causes of action for abuse of process and intentional infliction of emotional distress.

On or about December 14, 1990, the Lincoln defendants filed another general demurrer to Cantu's first amended complaint. All defendants demurred to all three causes of action in the first amended complaint, and joined in the others' demurrer. On January 3, 1991, the demurrers were heard by the trial court, now Judge Valerie Baker presiding. Judge Baker sustained both demurrers on all the grounds the defendants raised. Cantu now appeals from Judge Baker's ruling.

B. *Factual Summary*

Nosotros had maintained savings and checking accounts with Lincoln's Los Angeles branch since March 1986. William M. Zamora, as president of Nosotros, opened the accounts (the Nosotros accounts or the stake). As of October 2, 1986, the signature cards for these accounts authorized Lincoln to release funds to only Mr. Zamora and Roberto A. Jiminez of Nosotros. On or about October 2, 1986, an individual named Manny Diaz visited a Lincoln branch claiming that Nosotros authorized him to change the signature cards. As of that date, the Nosotros accounts contained approximately $14,000. Mr. Diaz requested that Lincoln delete Mr. Zamora's name from the signature card and add Mr. Diaz's name and the names of several other individuals.

On October 8, 1986, Mr. Zamora visited the same Lincoln branch and produced a copy of a preliminary injunction (the Zamora injunction) issued in December 1985 as part of a superior court action entitled Nosotros v.

Cortez, (No. C577490) (the Zamora action). The Zamora injunction enjoined, inter alia, Mr. Diaz from interfering with Mr. Zamora's rights, privileges and duties as president of Nosotros and appeared to prohibit Mr. Diaz's attempt to change the signature card for the Nosotros accounts.

On notice of the competing claims between, inter alia, Messrs. Zamora and Diaz to signatory authority, Lincoln then froze the Nosotros accounts and advised the affected parties of its action, including Maria C. Davoli, Esq., Mr. Zamora's counsel. Ms. Davoli confirmed that the Zamora injunction was still in effect.

Two weeks later, on October 21, 1986, Cantu called David Thompson, Esq., Lincoln's corporate counsel, asked for Lincoln's address for the stated purpose of starting legal proceedings against Lincoln, and claimed that Lincoln had wrongfully put a hold on the Nosotros accounts. Prior to this contact, Lincoln had no idea of Cantu's involvement in the Nosotros dispute. On October 27, 1986, only six days later, Lincoln was served with a complaint which sought, inter alia, injunctive relief and *$5 million in punitive damages* from Lincoln and others, including *Mr. Zamora* (the Nosotros action and the Nosotros complaint). The Nosotros complaint alleged repeatedly that Mr. Zamora had urged Lincoln to freeze the Nosotros accounts when he presented the Zamora injunction to Lincoln.

On October 28, 1986, Lincoln, through the Parker defendants, filed a complaint in interpleader pursuant to Code of Civil Procedure sections 386-386.6, entitled Lincoln Sav. & Assn. v. Nosotros, (Super. Ct. No. C622602), naming Nosotros, Cantu, Mr. Zamora, Mr. Diaz, Mr. Jiminez, Tony Cortez, Rick Castro, Manny Castro, Ralph Camarillo, and Richard Rodriguez as claimants. Each individual claimant in the interpleader action was alleged to be, and was, affiliated with Nosotros. The interpleader action allegedly arose from the dispute between Nosotros members, or its internal factions, over control of Nosotros and the Nosotros accounts.

Lincoln alleged, in substance, that it had no interest in the disputed Nosotros accounts, but that it could not release control of the stake to any of the claimants without risking liability to the other claimants. Lincoln sought injunctive relief pursuant to Code of Civil Procedure section 386, subdivision (f) to block the claimants from filing suits against it with respect to the stake and to stay the Nosotros action. The interpleader complaint sought no damages from Cantu or any other claimant. When Lincoln filed the interpleader complaint, it also deposited the stake with the court pursuant to Code of Civil Procedure section 386, subdivision (c).

The court granted a temporary restraining order (the TRO) in favor of Lincoln on October 28, 1986. On November 7, 1986, Cantu filed an opposition to the TRO and the requested preliminary injunction. Cantu's opposition contained extensive arguments on behalf of Nosotros to the effect that

Lincoln had falsely, erroneously and fraudulently frozen the Nosotros accounts in improper reliance on statements made by Mr. Zamora—referred to as the "President"—and the Zamora injunction. On November 14, 1986, the court granted the relief Lincoln sought and, on November 21, 1986, issued a preliminary injunction (the Lincoln injunction) which, inter alia, stayed the Nosotros action. The Lincoln injunction was never vacated. It remained in effect, despite Cantu's protests, until the court released the Nosotros accounts from its jurisdiction as a result of a settlement between Nosotros, Mr. Zamora, and all claimants named in the interpleader action, except for Cantu, who refused to participate. On November 9, 1988, Lincoln dismissed the interpleader action with prejudice against *all* claimants. On November 22, 1988, a dismissal of the Nosotros action was filed and entered by the court.

## IV.

### ISSUES ON APPEAL

1. Whether or not, as a matter of public policy under California law, a plaintiff in interpleader may incur tort liability to a named claimant in an interpleader action when the claimant had no claim to the stake.

2. Whether the ruling sustaining the demurrers to Cantu's cause of action for malicious prosecution should be affirmed on any of the grounds identified in the demurrers filed by the Lincoln defendants or the Parker defendants.

3. Whether the ruling sustaining the demurrers to Cantu's cause of action for abuse of process should be affirmed on any of the grounds identified in the demurrers filed by the Lincoln defendants or the Parker defendants.

4. Whether the ruling sustaining the demurrers to Cantu's cause of action for intentional infliction of emotional distress should be affirmed on any of the grounds identified in the demurrers filed by the Lincoln defendants or the Parker defendants.

5. Whether the demurrers to Cantu's three causes of action should have been sustained without leave to amend.

## V.

### DISCUSSION

A. *As a matter of law and public policy, an interpleader plaintiff cannot incur tort liability for naming someone as a potential claimant when filing an interpleader action.*

The demurrers to the amended complaint were properly sustained because Cantu did not adequately plead causes of action for malicious prosecution, abuse of process, or intentional infliction of emotional distress. ▮▮▮ At a more fundamental level, however, those causes of action are barred because the lawsuit upon which Cantu's claims are based was for interpleader. No California statute or decision provides any basis for recovery on the tort theories advanced by Cantu in the interpleader context. Indeed, all applicable statutory provisions, as well as the limited case law in this area, make clear that Lincoln's use of the interpleader mechanism was not only authorized by statute and appropriate under the circumstances, but protected and immunized the defendants from Cantu's claims.

Both the statutory scheme embodied in Code of Civil Procedure section 386 and significant policy reasons support the trial court's decision to sustain the demurrers. Moreover, reversal of the ruling on the demurrers would produce unwarranted and unprecedented repercussions by (a) circumventing the strict pleading requirements imposed in connection with the malicious prosecution cause of action, (b) expanding the malicious prosecution tort, a result which the California Supreme Court expressly opposed in *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498], and/or (c) eviscerating of the salutary goals of the interpleader statute.

Not only do the cases cited by Cantu not justify expansion of the three alleged torts to interpleaded matters,[2] but Cantu's allegations closely resemble those examined in *Pacific Loan Management Corp.* v. *Superior Court* (1987) 196 Cal.App.3d 1485 [242 Cal.Rptr. 547], where the Court of Appeal affirmed a dismissal of a cross-complaint against an interpleading party for, *inter alia,* abuse of process and intentional infliction of emotional distress. There, the court first recognized that a party's right to interplead is statutorily authorized and subject to limited preconditions:

"The statute [providing for interpleader] in its present form, Code of Civil Procedure section 386, subdivision (b), *requires only that the stakeholder file a verified pleading disclaiming any interest in the money or property claimed. It is the stakeholder's avowed disinterest in the interpleaded proceeds which gives him the right to interplead.*" (Italics added.) (*Id.,* at p. 1489.) The court then concluded that, where a party disavows interest in the interpleaded

---

[2]For example, Cantu's reliance on *Dickey* v. *Rosso* (1972) 23 Cal.App.3d 493 [100 Cal.Rptr. 358], is inapposite. *Dickey* concerned the measure of damages available to defendants where plaintiff's lawsuit caused delay in the construction of a house. (*Id.,* at p. 495.) It held that a defendant may recover damages on the basis of surety bonds posted by plaintiff in connection with a court's temporary restraining orders. (*Id.,* at p. 499.) The remedy of an independent

stake, imposition of tort liability for commencing the interpleader is precluded.

*"How . . . could [defendant] be held accountable in tort because it declined to resolve [a] problem and instead tendered the funds into court? We know of no authority, and [the debtor/trustor] cites none, for such a result."* (Italics added.) (196 Cal.App.3d at p. 1492.) Here, as in *Pacific Loan,* a party (Lincoln) was faced with a series of competing claims to funds it held. It availed itself of the statutorily prescribed interpleader procedure to discharge itself of responsibility as a disinterested stakeholder. Cantu presents no authority to support the proposition that in seeking relief directly authorized by the interpleader statute a party subjects itself to tort liability.

1. *Defendants' conduct in the interpleader action was authorized by, and consistent with, the interpleader statute.*

The relief sought by Lincoln below was patently authorized by applicable statutes. ▮▮▮ A party against whom double or multiple claims *are made, or may be made,* may bring a separate action compelling the claimants or potential claimants to interplead and litigate their claims *inter se.* (Code Civ. Proc., § 386, subd. (b)[3].) A court may issue an order restraining parties to the action from instituting or further prosecuting any other proceedings affecting the rights and obligations as between the parties. (Code Civ. Proc., § 386, subd. (f).) A court may also provide for the assumption of attorney fees by one or more of the adverse claimants to the interpleaded fund. (Code Civ. Proc., § 386, subd. (a).) The requirement that all potential claimants to a stake be named in the interpleader complaint in conjunction with the right of an interpleading party to stay other suits related to the dispute, permits resolution of a controversy with respect to the stake in a single forum and with finality.

2. *Cantu's damages were solely attributable to his own conduct.*

▮▮▮ Cantu alleges that defendants should have dismissed him because he filed an answer denying a claim to the stake. There is nothing in Code of Civil Procedure section 386, however, that imposes an obligation on an interpleading party to monitor the action and dismiss parties who assert no

---

action for malicious prosecution was mentioned only once in passing by the court, (*id.,* at p. 497), and the case contained no discussion of the interpleader procedure.

[3]Code of Civil Procedure section 386, subdivision (b) provides in pertinent part, as follows:

"Any person, firm, corporation, association or other entity against whom double or multiple claims are made, *or may be made,* by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." (Italics added.)

claim to a stake. More to the point, however, Cantu could not possibly have been damaged solely as a result of being named as a claimant. At the core of the interpleader procedure is the notion that a "claimant" is not a defendant from whom affirmative relief is sought. Interpleader actions impose *no* obligations on claimants. Claimants are simply *offered* the opportunity to assert a right to control of a stake.

In his opening brief, Cantu makes a number of contentions as to how *he had no choice* but to "litigate" the interpleader action until Lincoln dismissed him. These contentions are completely without factual or legal support. No harm can befall a claimant who merely renounces any conceivable right to a stake. Inasmuch as a "default" in the interpleader action simply would have barred his claim, Cantu need never have acted at all if he had no claim to the stake.

If Cantu did not want to participate in the interpleader action, he needed only to file a disclaimer relinquishing any purported claim to the stake. (*Sterling Escrow Co.* v. *Vandernoot* (1957) 150 Cal.App.2d 735, 737, 739 [310 P.2d 692].) Indeed, on November 14, 1986, at the hearing on the Lincoln injunction, counsel for Lincoln, in open court, *invited him to file such a disclosure*:

"[A]s to Mr. Cantou [*sic*], any defendant in an interpleader action can simply file something with the court saying that that defendant does not want to make a claim against the sta[k]e."

Cantu never bothered to file such a disclaimer with the court. Alternatively, Cantu could have remained silent and passive. Another option would have been to answer, and then do nothing. Despite his assertion that he had no claim, Cantu pursued none of these options. The thousands of dollars Cantu claims to have spent on attorney fees while representing himself in propria persona need never have been spent.

In practice, the theory upon which Cantu relies, if approved and applied, would inevitably burden all interpleading parties with duties to claimants that are not set out in the interpleader statute and would eliminate its utility. Creating a requirement that a stakeholder dismiss claimants, sua sponte, when and if it interprets a claimant's pleading to express a request for dismissal, would establish a tension with the current goal of removing the stakeholder from the controversy. The new requirements would expose an interpleading party to potential liability if it were to misinterpret a claimant's pleading and either (a) dismiss one against its wishes, or, (b) as here, fail to file such a dismissal.

The interpleader action provides a near perfect illustration of why such a requirement would be unworkable. Cantu's opposition to the TRO contains lengthy arguments alleging fraud, abuse of process and other wrongdoing by Lincoln, affirmative defenses, and Nosotros's right to recover damages from Lincoln. Even if the interpleader statute required dismissal of a claimant who renounced any personal right to control a stake—which it does not—it is not clear whether a named claimant (Cantu), who argued on behalf of a second claimant (Nosotros) against a third (Mr. Zamora) and the stakeholder (Lincoln), would have to be dismissed.[4] Simply stated, judicial economy would be undermined by the creation of this new requirement.[5]

3. *Lincoln owed no duty to resolve the dispute in lieu of making use of the interpleader statute.*

■■■ Cantu asserts that in refusing to side with Mr. Diaz or Nosotros against Mr. Zamora, Lincoln's employees "made wrongful and improper decisions on the spot on legal matters of which they knew nothing about." The argument is meritless. It was not Lincoln's place to resolve the apparent dispute without the consent of the competing claimants. " '[W]hen a disagreement arises as to the ownership of said property, the holder thereof has not obligated himself to *settle said disagreement* and deliver the property to either of said parties in face of conflicting claims thereto.' " (Original italics.) (*Pacific Loan Management Corp.* v. *Superior Court, supra,* 196 Cal.App.3d at p. 1490.)

Lincoln's obligation—like that of any interpleader party—was not to resolve the dispute between the claimants, but only to deposit money with the court which was to decide the dispute.

■■■ "The true test of suitability for interpleader is the stakeholder's disavowal of interest in the property sought to be interpleaded, coupled with the perceived ability of the court to resolve the entire controversy as to entitlement to that property without need for the stakeholder to be a party to the suit. ' "[I]f the relations of the parties are such that the court's decision would determine the responsibility of the escrow-holder, he is for the purposes and within the scope of the code section authorizing interpleader a mere stake-holder." ' " (196 Cal.App.3d at pp. 1489-1490.) ■■■ In the

---

[4]In any event, relying on the content of the answer would have been improper under the terms of Code of Civil Procedure section 386, subdivision (d) which provides, in pertinent part, that: "The allegations in such answer shall be deemed denied by all other parties to the action, unless otherwise admitted in the pleadings."

[5]Cf. *Cooper* v. *Pirelli Cable Corp.* (1984) 160 Cal.App.3d 294, 298-299 [206 Cal.Rptr. 581] (for reasons of judicial economy, no cause of action may be stated for malicious prosecution of a small claims action).

absence of an agreement between the claimants, the matter was one for the courts to determine.

B. *Judicially noticeable facts conclusively demonstrate that Cantu's causes of action are based on allegations directly contradicted by assertions he made in the interpleader action; this court therefore disregards those allegations and affirms the ruling on demurrer without leave to amend.*

Cantu's allegations hinge on the assertion that defendants named him as a claimant to the stake to create the illusion that multiple claimants existed. Cantu's allegations are directly contradicted by his own statements in the interpleader action.

■ When reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [41 A.L.R.3d 1187].)[6] In addition, in the interests of justice, on demurrer, a court will also consider judicially noticeable facts, even if such facts are not set forth in the complaint. (*Watson* v. *Los Altos School Dist.* (1957) 149 Cal.App.2d 768, 771 [308 P.2d 872].) In particular, appellate courts should judicially notice any fact of which the trial court took proper judicial notice. (Evid. Code, § 459, subd. (a).)

Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case *and other cases.* (Evid. Code, § 452; Code Civ. Proc., § 430.70; *Colapinto* v. *County of Riverside* (1991) 230 Cal.App.3d 147, 151 [281 Cal.Rptr. 191]; *Morton* v. *Loveman* (1968) 267 Cal.App.2d 712, 717-719 [73 Cal.Rptr. 623].) The complaint should be read as containing the judicially noticeable facts, "even when the pleading contains an express allegation to the contrary." (*Chavez* v. *Times-Mirror Co.* (1921) 185 Cal. 20, 23 [195 P. 666].) ■ A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. (*Colapinto* v. *County of Riverside, supra,* 230 Cal.App.3d at p. 151.) Likewise, the plaintiff *may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false.* (*Morton* v. *Loveman, supra,* 267 Cal.App.2d at pp. 717-719.)

" 'The principle is that of *truthful pleading.*' " (Original italics.) (*Watson* v. *Los Altos School Dist., supra,* 149 Cal.App.2d at p. 771.) When the plaintiff

---

[6]This assumption is not, however, applicable to contentions, deductions, or conclusions of fact or law.

pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer. (*Id.*, at p. 771; accord *Morton* v. *Loveman, supra,* 267 Cal.App.2d at pp. 717-719; *Pike* v. *Archibald* (1953) 118 Cal.App.2d 114, 116-119 [257 P.2d 480].) Under such circumstances, the court will disregard the falsely pleaded facts and affirm the demurrer.

■ Cantu reasons that, but for his inclusion in the suit, the interpleader action would have been improper, and defendants would not have been able to enjoin the Nosotros action. "At all times herein mentioned the Plaintiff Cantu was informed and believed that there were no competing claims to the funds." This contention, which is incorporated by reference in Cantu's other causes of action, remains the cornerstone of, and permeates, Cantu's attempt to obtain relief on appeal. Cantu argued that:

*"To qualify for injunctive relief, Lincoln had to falsely allege that it was facing vexatious litigation.* To accomplish this Lincoln Savings wilfully misrepresented to the Court that Cantu had claimed for his own the Nosotros funds . . . . [¶] *Lincoln fabricated the evidence to trick and convince the court that it was actually facing a multiplicity of lawsuits* which entitled it to receive injunctive relief to enjoin the filing of new lawsuits as well as the haulting [*sic*] of the prosecution of existing litigation, knowing that Lincoln was not entitled to it. *To formalize its plans, Lincoln only needed to claim that it had received a separate threat of a lawsuit from Cesar Cantu."* (Italics added.)

Defendants' alleged strategem is the sole basis identified in the first amended complaint for the allegation that defendants lacked probable cause and acted with malice in initiating the interpleader action. Yet, well before he filed this action, Cantu knew that the defendants knew that Messrs. Zamora and Diaz had asserted competing claims to the stake. Having admitted that he knew that defendants faced a multiplicity of claims concerning the stake, Cantu cannot now inconsistently and falsely allege to the contrary.

There is no doubt that Cantu filed this action with full knowledge that competing claims for control of the Nosotros accounts existed at the time Lincoln filed the interpleader action. As the Parker defendants demonstrated in their demurrer, Cantu asserted, and therefore conceded, that Mr. Zamora, a named claimant in the interpleader action and the former president of Nosotros, claimed a right to control the Nosotros accounts separate and apart from, and in contrast to the claims of Nosotros and its officers. Cantu answered "[t]here is a misjoiner [*sic*] of defendants in that Caesar Cantu, for instance, has been named a defendant together with *Nosotros, William*

*Zamora and Nosotros' Treasurer Manny Diaz, who are the only ones who have claimed a right to Nosotros' funds at Lincoln Savings."* (Italics added.) Moreover, the verified Nosotros complaint sought recovery from Mr. Zamora and alleged that Mr. Zamora made false representations to Lincoln before Lincoln froze the Nosotros accounts.[7]

Contrary to Cantu's assertion, it is clear that the Parker defendants had identified at least one party who asserted a claim to control of the Nosotros accounts other than Nosotros itself and Mr. Cantu.[8] Cantu's attempt to escape and plead around the import of his own admissions is transparent.

C. *Cantu has failed to demonstrate that any of the grounds on which the trial court sustained the demurrer without leave to amend are erroneous.*

 1. *Cantu has failed to carry his burden to show that the facts he pleaded entitle him to relief on any legal theory.*

 ■ Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Under both standards, the plaintiff bears the burden of demonstrating that the trial court erred. (*Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931, 939 [175 Cal.Rptr. 81].) Appellate courts first review the complaint de novo to determine whether or not the plaintiff's complaint alleges facts sufficient to state a cause of action under any legal theory, (*id.* at p. 939), or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)[9]

To establish that he adequately pleaded even one of his causes of action, Cantu must show that he pleaded facts sufficient to establish *every element of that cause of action.* (*Friendly Village Community Assn., Inc.* v. *Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 224-225 [107 Cal.Rptr. 123, 69 A.L.R.3d 1142] [affirming the sustaining of a demurrer when plaintiff failed to allege any facts which would support only one of the elements of the

---

[7]Cantu readily admits that he worked for the lawyer who filed the Nosotros complaint and knew its contents.

[8]A review of the arguments of counsel at the hearing on the Lincoln injunction makes the existence of this dispute even more apparent. Mr. Zamora's attorney, Ms. Davoli, contended that the Nosotros resolution that Mr. Diaz presented to Lincoln on October 2, 1986, was "totally invalid."

[9]Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

cause of action].) Thus, if the defendants negate *any* essential element of a particular cause of action, this court should sustain the demurrer to that cause of action. (*Sher* v. *Leiderman* (1986) 181 Cal.App.3d 867, 885-886 [226 Cal.Rptr. 698].)[10] ▇ As a consequence, Cantu bears the burden of overcoming *all* of the legal grounds on which the trial court sustained the demurrers, i.e., all of the grounds raised in both demurrers. (*Legg* v. *Brody* (1960) 187 Cal.App.2d 79, 82 [9 Cal.Rptr. 593].)

Cantu devoted approximately two-thirds of his opening brief to allegations that Lincoln filed the interpleader action to: (1) stay the Nosotros action; (2) recoup its attorney fees for defending the Nosotros action; and (3) punish Cantu for his involvement in the Nosotros action and ruin his relationship with his employer and Nosotros.[11] These allegations are, however, nothing more than "theories." They do not constitute facts and cannot properly establish any element of any cause of action. (See *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 187 [156 Cal.Rptr. 745] [stating that plaintiff's *beliefs* as to defendant's purposes without supporting facts are insufficient allegations].)

2. *Cantu has failed to demonstrate that any of the grounds for the demurrers to his claim for malicious prosecution are erroneous.*

In *Sheldon Appel Co.*, the California Supreme Court restated the restrictive standard applicable to determining whether or not a litigant's attorney could incur liability for the disfavored tort of malicious prosecution. ▇ "[A] plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" (Citations omitted.) (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d at p. 871.) The allegations of the first amended complaint do not properly plead any of these elements, leading this court to conclude that the trial court's sustaining the demurrer to the cause of action for malicious prosecution was proper.

a. *The interpleader action did not terminate in Cantu's favor.*

▇ Cantu alleges in substance that he "prevailed" in the interpleader action because Lincoln dismissed him as a claimant having failed to obtain any right to control the stake. Such an allegation constitutes a legal non sequitur. In an interpleader action there is no "accused," nor can the interpleader plaintiff attempt to establish any person's culpability. As between

---

[10]If another proper ground for sustaining the demurrer exists, this court will still affirm the demurrers even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court. (*Hogen* v. *Valley Hospital* (1983) 147 Cal.App.3d 119, 127 [195 Cal.Rptr. 5].)

[11]The allegations in subparagraph (3) are not alleged in the first amended complaint.

plaintiff and claimant an interpleader action is not adversarial. (Code Civ. Proc., § 386.)

For at least four reasons, Cantu's claim that the interpleader action terminated in his favor is, as a matter of law, inadequate to meet the favorable termination element: (1) Cantu failed to plead sufficient facts to support this element; (2) an interpleader action is not adversarial as between a claimant and the stakeholder and, hence, Cantu could not prevail against Lincoln, or vice versa; (3) the dismissal of the competing claimants and the disposition of the stake to Nosotros precluded the court from exercising continued jurisdiction; and (4) the parties resolved the interpleader action by settlement.

First, Cantu fails to plead any *facts*—other than the fact of the dismissal— to support his conclusion that the interpleader action terminated in his favor. ▆▆▆ "A termination is favorable when it reflects 'the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant.' " (*Camarena* v. *Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1099 [235 Cal.Rptr. 820].) "It is not enough . . . merely to show that the proceeding was dismissed." (*Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].) The termination must demonstrate the innocence of the accused. "Standing alone, an allegation that all proceedings terminated favorably to plaintiff would be a mere conclusion and insufficient to satisfy requirements of pleading on the point where placed in issue by general and special demurrer." (*Webb* v. *Youmans* (1967) 248 Cal.App.2d 851, 854 [57 Cal.Rptr. 11].) Without additional facts, Cantu's allegation too is nothing more than a conclusion and, therefore, insufficient.

The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt. (*Jaffe* v. *Stone, supra,* 18 Cal.2d at p. 150; *Haight* v. *Handweiler* (1988) 199 Cal.App.3d 85, 88-89 [244 Cal.Rptr. 488].) The focus is not on the malicious prosecution plaintiff's opinion of his *innocence*, but on the opinion of the dismissing party. (*Id.,* at p. 89.)

▆▆▆ Second, it is difficult to comprehend how Cantu can logically plead any fact which would indicate that the interpleader action terminated in his favor. There was no accused, and Lincoln did not attempt to establish any party's culpability. Cantu's innocence or guilt were simply not at issue. As between an interpleader plaintiff and the named claimants, an interpleader action simply is not adversarial—the interpleader plaintiff attempts

to *offer* money to the named claimants, *not take* money away. Cantu attempts to overcome this logic by pointing out that Lincoln dismissed him from the interpleader action and cites *MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 289 [79 Cal.Rptr. 707, 35 A.L.R.3d 641], for the proposition that a dismissal may constitute a favorable termination. Cantu notably ignores the fact that the underlying action in *MacDonald* involved an *adversarial proceeding* contesting the validity of a will. (*Id.*, at pp. 285-286.) Here, on the merits, Cantu could not have been either a winner or loser with respect to Lincoln.[12]

 Third, a dismissal for lack of jurisdiction does not involve the merits and cannot constitute a favorable termination. (*Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827 [145 Cal.Rptr. 829]; *Ferraris* v. *Levy* (1963) 223 Cal.App.2d 408, 411 [36 Cal.Rptr. 30].) Cantu expressly acknowledged that he was not dismissed until Lincoln and the other named claimants settled the interpleader action. Once Lincoln and the other named claimants settled the interpleader action, the trial court returned the stake to Nosotros. Lincoln then dismissed the interpleader action as to all defendants, including Cantu, at the same time. Because the settlement ended the dispute between Mr. Zamora and Nosotros and disposed of the stake to Nosotros, the court lost subject matter jurisdiction. Once the court distributed the stake, no basis existed upon which the court could have continued to exercise jurisdiction even if it wanted. It would be illogical to suggest that the court could have continued to exercise jurisdiction without the stake and with Cantu as the sole "non-claimant." Hence, Lincoln had to dismiss the interpleader action, or the court could have done so itself.[13]

Fourth, Lincoln dismissed Cantu as a consequence of a settlement between Lincoln and all the other claimants. A settlement does not constitute favorable termination of an action for the purpose of a malicious prosecution claim. (*Oprian* v. *Goldrich, Kest & Associates, supra,* 220 Cal.App.3d 337, 343-344; *Haight* v. *Handweiler, supra,* 199 Cal.App.3d at p. 89.) This rule applies because a dismissal due to settlement, negotiation or

---

[12]It is worth noting, however, that Lincoln obtained all the relief it sought as a consequence of the settlement and dismissal of the interpleader action. As Cantu conceded, Lincoln obtained both a TRO and the Lincoln injunction, thereby successfully staying the Nosotros action. The court never quashed the Lincoln injunction, and even if it had, Cantu's dismissal would not have constituted a favorable termination. (*Webb* v. *Youmans, supra,* 248 Cal.App.2d at pp. 853-854.) Thus, to the extent a party may prevail in an interpleader action, Lincoln did so.

[13]Cf. *Oprian* v. *Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 344 [269 Cal.Rptr. 429]. ("It would be a sad day indeed if a litigant and his or her attorney could not dismiss an action to avoid further fees and costs, simply because they were fearful such a dismissal would result in a malicious prosecution action. . . . The law favors the resolution of disputes.")

compromise reflects ambiguously on the merits of the action and leaves open the question of the defendant's guilt or innocence. (*Minasian* v. *Sapse, supra,* 80 Cal.App.3d at p. 827, fn. 4; accord *Webb* v. *Youmans, supra,* 248 Cal.App.2d at p. 853.)

Even the dismissal of a party who refuses to participate in a settlement concluded by other parties does not constitute a favorable termination for the nonsettling party. (*Oprian* v. *Goldrich, Kest & Associates, supra,* 220 Cal.App.3d at p. 344; *Haight* v. *Handweiler, supra,* 199 Cal.App.3d at p. 89.) In *Haight*, Haight originally filed a medical malpractice action against Godes, but lost. (*Id.,* at p. 87.) Godes then sued Haight and Haight's former attorney and expert witness for malicious prosecution. Haight's former attorney and expert witness settled with Godes who dismissed all three defendants, although neither Haight nor his new attorney consented to the settlement or dismissal. Haight then sued Godes for malicious prosecution. The reviewing court concluded that Godes's malicious prosecution action did not terminate in favor of Haight. (*Id.,* at pp. 88-89.) The settlement and Haight's dismissal did not reflect on the merits of Godes's claim because Godes merely decided that he had obtained a satisfactory resolution of his claim. (*Id.,* at p. 89; accord *Oprian, supra,* 220 Cal.App.3d at pp. 343-344.) **(10d)** Because Cantu cannot dispute that Lincoln dismissed him *as a result of the settlement*, he cannot allege that the dismissal resulted in a favorable termination.

In conclusion, once the parties settled and the court released the stake, nothing remained against which to make a claim, and there was no further *subject matter jurisdiction* or purpose for the interpleader action. The settlement cemented the results of the injunctive relief sought by and granted to Lincoln and was consistent with the position asserted by Lincoln from the outset. Consequently, the dismissal of the interpleader action did not constitute a concession on the merits or termination in Cantu's favor.

 b. *The Parker defendants had probable cause to file the interpleader action.*

 When the Parker defendants filed the interpleader action on Lincoln's behalf, they contend that they relied on, inter alia, the following: (a) the Thompson declaration, which indicated that Cantu was a potential claimant to the stake, (b) Nosotros's pleadings, (c) the Zamora injunction, and (d) communications with Mr. Zamora's attorney, Maria Davoli, Esq., all of which indicated that Nosotros and Zamora disputed, *inter se*, the right to control the Nosotros accounts. Cantu does not dispute that this information was available to the Parker defendants when they filed the interpleader

action on behalf of Lincoln. In light of the information available to the defendants at the time they filed the interpleader action, it is clear, even in hindsight, that probable cause existed for filing it.

An attorney has probable cause to file a claim if a court determines, as a matter of law, that "any reasonable attorney would have thought the claim tenable." (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 886.) Contrary to Cantu's contention, the question is not one of fact. (*Id.,* at p. 879.) Where, as here, the facts *relied upon by the attorney* are not in dispute, the attorney's subjective belief in the legal merits of the claim is irrelevant to determining probable cause. (*Id.,* at p. 879.) The court must apply an objective standard. (*Id.,* at p. 878.) "[I]f the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail." (*Id.,* at p. 878.) Even if the conclusions drawn by the Parker defendants were incorrect, they were, by an objective standard, reasonable in light of the available information.

c. *The Parker defendants did not prosecute the interpleader action with malice.*

 Malice "may exist when proceedings are commenced primarily for an improper purpose." (*Camarena* v. *Sequoia Ins. Co., supra,* 190 Cal.App.3d at p. 1097.) In his first amended complaint, Cantu alleged that the defendants' "improper" purpose was to enjoin the Nosotros action and obtain attorney fees by creating the illusion of a dispute where none existed. However, as discussed herein, Cantu effectively admitted, prior to filing this suit, that a dispute existed concerning the Nosotros accounts. Because the interpleader statute plainly authorizes the relief Lincoln sought in the interpleader action, the defendants' actions were hardly improper. Moreover, Cantu did not allege that *he* was the target of defendants' allegedly "improper purpose," merely that he was an instrumentality used to achieve it. Because a malicious prosecution plaintiff must also show that *his or her interest was the target of the defendant's improper purpose* (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 881; *Hogen* v. *Valley Hospital, supra,* 147 Cal.App.3d 126-127), Cantu's cause of action is defective. (*Camarena* v. *Sequoia Ins. Co., supra,* 190 Cal.App.3d at pp. 1097-1098.)

3. *Cantu has failed to demonstrate that any of the grounds for sustaining the demurrers to his abuse of process claim are erroneous.*

 In order to state a cause of action for abuse of process, a party must adequately plead two fundamental elements: " ' "[F]irst, an ulterior purpose,

and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding." ' " (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168 [232 Cal.Rptr. 567, 728, P.2d 1202 ].) Cantu's opening brief is devoid of any persuasive argument rebutting the defendants' contentions that Cantu failed to adequately plead either of these two fundamental elements. Cantu cannot convincingly dispute that the interpleader action was used for its proper purpose or allege a wilful, unprivileged and improper act in the use of the interpleader process by the defendants.

Cantu alleged that (1) the defendants filed the interpleader action to stay the prosecution of the Nosotros action, (2) named him as a claimant to create the appearance of a dispute, and (3) that the defendants submitted perjurious declarations to help accomplish their nefarious goals. Cantu does not identify which of the elements are satisfied by the defendants' alleged conduct and, more to the point, he has not properly pleaded these elements. As will be demonstrated below, none of the alleged conduct satisfies either of the elements and, in any event, the cause of action is time barred.

a. *No cause of action lies for abuse of process for maintaining an interpleader action where the plaintiff had no right to the stake.*

In *Pacific Loan*, the court affirmed a summary judgment dismissing a cross-complaint that stated claims for, inter alia, abuse of process and intentional infliction of emotional distress arising out of the cross-defendant's filing of an interpleader and refusal to turn over the stake to one of the named claimants. (*Pacific Loan Management Corp.* v. *Superior Court, supra,* 196 Cal.App.3d at p. 1488.) There, in opposing the motion for summary judgment, the cross-complainant argued, in essence, that the cross-defendant was "liable simply because it chose to file interpleader and refused to adjudicate the dispute between the claimants itself and in favor of [the cross-complainant]," (*id.,* at p. 1489) arguments strikingly similar to those Cantu makes here.

In affirming dismissal of the cross-complaint, the court held that a claimant who did not clearly have a right to immediate release of interpleaded funds cannot state a cause of action for abuse of process. (*Id.,* at p. 1491.) Here, Cantu was patently not entitled to immediate release of the stake.

b. *The Parker defendants used the interpleader statute properly.*

The Parker defendants' allegedly improper purposes in initiating the interpleader action, i.e., to stay the pending lawsuit and permit the resolution

of the competing claims to the stake between those who claimed rights to it, were authorized by the interpleader statute and were not "improper." The interpleader statute authorizes a stakeholder to file an interpleader action (a) to stay prior filed actions concerning disputes over funds in which the stakeholder has no interest, (b) to name all potential persons who may assert a claim to control the funds, and (c) to obtain fees and costs at the court's discretion. (Code Civ. Proc., § 386.) Because there was a dispute between at least two of the claimants named by the defendants to the stake, defendants were entitled to seek the relief the trial court granted. Consequently, Cantu's claim is defective because "there is no abuse of process if it is used for its proper purpose even though the person uses it for wrongful and malicious motives." (5 Witkin, Summary of Cal. Law, Torts (9th ed. 1988) § 463, p. 550.)

 c. *Cantu failed to allege a wilful act.*

Cantu also failed to adequately allege a wilful act in the use of the interpleader process not proper in the regular conduct of the procedure. Neither filing a complaint nor submitting perjurious declarations—the only conceivable acts alleged—operates as a wilful act sufficient to meet the requirements of this element.

█ First, merely filing or maintaining a lawsuit is not a proper basis for an abuse of process claim: "Because the lack-of-probable-cause requirement in the malicious prosecution tort plays a crucial role in protecting the right to seek judicial relief [citation], we agree with the prior decisions which have concluded that this element may not be circumvented through expansion of the abuse of process tort to encompass the alleged improper filing of a lawsuit." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, *supra*, 42 Cal.3d at p. 1170.) Consequently, filing the interpleader action does not satisfy the wilful act requirement.

█ Second, Cantu's conclusory allegation that the defendants knowingly filed an allegedly false and libelous declaration also fails to satisfy the wilful act requirement. Statements made in the course of litigation are subject to the privilege set forth in Civil Code section 47, subdivision (2) (currently Civ. Code, § 47, subd. (b)) and cannot provide the basis for an abuse of process action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212-215 [266 Cal.Rptr. 638, 786 P.2d 365]; *Kachig v. Boothe* (1971) 22 Cal.App.3d 626 [99 Cal.Rptr. 393].)

 d. *Cantu's claim for abuse of process is barred by the applicable one-year statute of limitations.*

█ Because abuse of process is an injury to the person, the statute of limitations applicable to Cantu's claim for abuse of process is one year.

(Code Civ. Proc., § 340, subd. (3); *Simons* v. *Edouarde* (1950) 98 Cal.App.2d 826, 828 [221 P.2d 203].) The limitations period begins to run when the abuse of process occurs. (*McFaddin* v. *H. S. Crocker Co.* (1963) 219 Cal.App.2d 585, 590 [33 Cal.Rptr. 389].) If the injury to the plaintiff does not occur at the time the abuse of process occurs, then the limitations period begins to run when the injury occurs. (*Kappel* v. *Bartlett* (1988) 200 Cal.App.3d 1457, 1467 [246 Cal.Rptr. 815].)

Cantu alleged that the wrongful act which constituted the abuse of process first occurred when Lincoln filed the interpleader action and served him with the complaint and the TRO. Because, according to Cantu, this occurred on November 2, 1986, at which time he allegedly became obligated to respond to the interpleader action, Cantu's injury occurred on that date. (*McFaddin* v. *H. S. Crocker Co.*, *supra*, 219 Cal.App.2d at pp. 588, 590-591.)

Cantu contended, as early as November 7, 1986, that the defendants' conduct constituted abuse of process. Nevertheless, Cantu did not file this action until March 8, 1989, at the earliest—the date on which he filed his original complaint for malicious prosecution. Because Cantu failed to prosecute any conceivable claim for abuse of process within the statutory one year period, his claim is barred.

4. *Cantu has failed to demonstrate that any of the grounds that the trial court relied upon to sustain defendants' demurrers to his claim for intentional infliction of emotional distress were erroneous.*

 a. *Cantu failed to adequately plead the elements of intentional infliction of emotional distress.*

In order to recover for intentional infliction of emotional distress, a plaintiff must plead, inter alia, that (1) the defendant engaged in outrageous conduct, and (2) the defendant's conduct was not privileged. (*Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 616-617 [210 Cal.Rptr. 578].) The Parker defendants argued in support of their demurrer that Cantu failed to state a cause of action for this tort due to his failure to adequately plead either element. In his opening brief, Cantu fails to address the pleading deficiencies identified in the Parker defendants' demurrer. There is no authority for the proposition that a party's attempt to submit a dispute to a judicial tribunal, as expressly authorized by Code of Civil Procedure section 386, can, in itself, give rise to a cause of action for intentional infliction of emotional distress. (*Pacific Loan Management Corp.* v. *Superior Court*, *supra*, 196 Cal.App.3d at p. 1491.)

Even at the demurrer stage, Cantu addressed only one of the tort's elements by arguing, without citation to authority, that the defendants' conduct was outrageous. He argued that: "Defendants maliciously named [Cantu] as a party to their litigation without caring what effect is [*sic*] had on him or his life for the purpose of deflecting other litigation." This allegation is insufficient, as a matter of law, to provide a basis for the outrageous conduct element of the tort.

■ First, liability can be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Rest.2d Torts, § 46, com. d, p. 73.)[14] Where, however, a party acts in good faith to pursue its own legal rights, such conduct is privileged, even if emotional distress will result. (*Id.*, § 46, com. g, p. 76.) ■ Here, the defendants instituted the interpleader action on notice of competing claims to control the stake. The defendants' actions do not constitute the outrageous conduct necessary for the maintenance of a cause of action in this tort.

Second, liability for intentional infliction of emotional distress is subject to the absolute defense of privilege as set forth in Civil Code section 47, subdivision (2). (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 212-215; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d at p. 641.) The only wrongful act Cantu alleged other than filing the interpleader action is filing a false declaration. Cantu has completely failed to present authority contravening the California Supreme Court's opinion in *Silberg.* Consequently, he can state no cause of action for intentional infliction of emotional distress, even if the defendants submitted perjurious and malicious declarations or pleadings.

Finally, Cantu has never presented any basis for his assertion that initiating a lawsuit can give rise to a cause of action for intentional infliction of emotional distress. ■ The allegedly improper filing of a lawsuit is redressable only in a cause of action for malicious prosecution. "To avoid improperly deterring individuals from resorting to the courts for the resolution of disputes, the common law affords litigants the assurance that *tort liability will not be imposed for filing a lawsuit* unless *a court* subsequently determines that the institution of the action was without probable cause."

---

[14]*Tortious* or even criminal conduct that would give rise to punitive damages for another tort, will not necessarily be sufficient to give rise to a claim for intentional infliction of emotional distress. (Rest.2d Torts, § 46, com. d, p. 73.) It follows that if the defendants' conduct was not tortious, no cause of action for intentional infliction of emotional distress will lie.

(First italics added.) (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d at p. 875.) ▮▮▮ Given that the sole basis alleged for Cantu's cause of action for intentional infliction of emotional distress is the defendants' initiation of the interpleader action and the filing of supporting declarations, this cause of action must be dismissed if for no other reason than that Cantu has otherwise sought to assert, albeit improperly, the only cause of action cognizable for the wrong alleged—malicious prosecution.

Because Cantu has failed to submit any persuasive argument demonstrating that the trial court improperly sustained the Parker defendants' demurrer to this cause of action, the ruling of the trial court is affirmed.

 b. *Cantu's claim for intentional infliction of emotional distress is barred by the applicable one year statute of limitations.*

▮▮▮ Because intentional infliction of emotional distress is an injury to the person, the applicable statute of limitations is one year. (Code Civ. Proc., § 340, subd. (3); *Scannell* v. *County of Riverside* (1984) 152 Cal.App.3d 596, 616 [199 Cal.Rptr. 644].) A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant. (*Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 50-51 [147 Cal.Rptr. 565].)

Cantu's own allegations in his first amended complaint demonstrate that this claim is barred by the statute of limitations. Cantu alleges that the outrageous conduct was filing the interpleader action because the Parker defendants allegedly knew that he had no personal claim to the funds and the interpleader action caused him severe emotional distress. In essence, Cantu claims that the Parker defendants filed the interpleader action on behalf of Lincoln to cause him severe emotional distress and that he suffered severe emotional distress once he was served with the interpleader complaint on November 2, 1986. Consequently, his cause of action accrued at that moment, the statute of limitations began to run, and Cantu's claim was barred one year from the date of service, i.e., November 3, 1987. The bar date passed more than one year before Cantu filed his *original* complaint in this action.

D. *Cantu failed to identify any new facts that he could allege in an amended complaint and demonstrate how those facts establish a cause of action.*

▮▮▮ When a trial court sustains a demurrer without leave to amend, the appellate court also reviews that ruling for abuse of discretion. (*Blank* v.

*Kirwan, supra,* 39 Cal.3d at p. 318.) A trial court does not abuse its discretion when it sustains a demurrer without leave to amend if either (a) the facts and the nature of the claims are clear and no liability exists, or (b) it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a claim. (*Kately* v. *Wilkinson* (1983) 148 Cal.App.3d 576, 581 [195 Cal.Rptr. 902].)

Again, the burden falls squarely on Cantu to show what facts he could plead to state a cause of action if allowed the opportunity to replead. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. (*Trustees of Capital Wholesale Electric etc. Fund* v. *Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 622, 626-627 [270 Cal.Rptr. 566]; *McMartin* v. *Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408 [261 Cal.Rptr. 437].) Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend. Cantu never filed a proposed amended complaint when he opposed the demurrers below so the only new facts for this court to consider are those Cantu sets forth in his opening brief. There are five of these.

1. *Cantu failed to identify new facts which could establish malicious prosecution.*

 Cantu identifies two new facts in his opening brief to support his malicious prosecution claim. First, Cantu now asserts that naming him as a claimant while knowing that he neither had a claim nor made a claim establishes malice. Again, Cantu ignores the inherent nature of an interpleader action—the interpleading plaintiff offers the claimants *an opportunity* to make a claim; it does not try to take something away from them. Allowing Cantu to establish malice based on this allegation—which arises out of an interpleader action, not an adversarial action—will make interpleading parties reticent to name anyone as a claimant when they are unsure and, thus, completely undermine the policy goals of interpleader.

The Parker defendants readily concede that naming someone as a defendant in an *adversarial* proceeding knowing that the person is not a proper defendant supports an allegation of malice. This analysis, however, only makes sense in the interpleader context when a claimant with a known, uncontested right to a stake is forced to litigate an interpleader action to recover the stake because the stakeholder used interpleader to frustrate the claimant. (See *Dunn* v. *Koehring Co.* (5th Cir. 1977) 546 F.2d 1193, 1199 [Interpleader constituted malicious prosecution because stakeholder instituted action to avoid paying stake to claimant who held a *judgment* against

the stake.].) Here, no one forced Cantu to litigate anything, and he could not have suffered any damages by failing to make a claim he did not have.

Second, to establish that the interpleader action terminated in his favor, Cantu now claims that Lincoln voluntarily dismissed him to avoid producing Mr. Symes for a deposition. The dismissal itself is not a new fact. Furthermore, the fact that Cantu obtained a collateral order in the course of the interpleader action does not mean that it terminated in his favor. (See *Webb v. Youmans, supra,* 248 Cal.App.2d at p. 854.)

2. *Cantu failed to allege any new facts which could avoid the statutory bar on his claims for abuse of process and intentional infliction of emotional distress.*

 To overcome the statutory bar on his claims for abuse of process and intentional infliction of emotional distress, Cantu now seems to suggest that alleged settlement discussions between him and Lincoln somehow tolled the statute of limitations. First, contents of settlement discussions are privileged as a matter of law. (Evid. Code, § 1152, subd. (a).) Second, Cantu points to nothing about these discussions that precluded him from asserting his claims in court.

Next, Cantu alleges that the TRO and the Lincoln injunction precluded him from asserting these claims until the interpleader action ended. This allegation is simply wrong; both orders explicitly state that they preclude the parties from asserting claims *involving control over the Nosotros accounts.* Cantu's claims do not seek relief affecting the rights to control the Nosotros accounts.

3. *Cantu has failed to set forth any new facts which could support the improper purpose element of his abuse of process claim.*

 To establish the improper purpose element of his abuse of process claim, Cantu now claims that the defendants prosecuted the interpleader action to punish him and ruin his relationship with his employer and Nosotros. Cantu points to nothing which even remotely supports this conclusion. This assertion is an insufficient basis upon which to permit an amendment. (Cf. *Weaver v. Superior Court, supra,* 95 Cal.App.3d at p. 187.) In any event, abuse of process still requires that the defendant wilfully use the specified process in an unauthorized manner, something which Cantu failed to allege any new facts to support. (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792-793 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083].)

4. *Cantu should not be allowed to plead any additional facts to support his causes of action.*

 None of the new "facts" that Cantu alleges establish any element of his claims. Furthermore, Cantu failed to allege any new facts whatsoever to support (1) the lack of probable cause requirement for his malicious prosecution claim, (2) the wilful act requirement for his abuse of process claim, or (3) the outrageous conduct requirement for his intentional infliction of emotional distress claim. Cantu's failure to identify any new facts to establish these elements requires this court to sustain the demurrers regardless of the impact of Cantu's allegedly "new" facts.

## VI.

### DISPOSITION

The judgment is affirmed. Costs of appeal are awarded to respondents.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 15, 1992.