Filed 10/31/14  Chaudry v. Centi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KAILASH CHANDRA CHAUDHARY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEBBIE SWANSON CENTI, <br><br> Defendant and Respondent. | H039733 <br> (Santa Clara County <br> Super. Ct. No. 112CV228137) |

## I.  INTRODUCTION

After appellant Kailash Chandra Chaudhary killed his ex-wife in 1986 and pleaded no contest to second degree murder, he voluntarily relinquished his parental rights to their daughter, K., during juvenile dependency proceedings.  K. was adopted by her court-appointed guardian, respondent Debbie Swanson Centi, in 1989.  In 2005, Chaudhary was released on parole.  (*In re Chaudhary* (2009) 172 Cal.App.4th 32, 34.)  In 2012, he filed the present action alleging that Centi had broken the promises she made to him regarding the rearing and education of K. in exchange for his voluntary relinquishment of his parental rights.  The complaint includes causes of action for fraud, constructive fraud, and intentional infliction of emotional distress.

Centi filed a motion for judgment on the pleadings on the ground that the action against her was time-barred under the three-year limitations period provided by Code of

Civil Procedure section 338, subdivision (d)[1] for fraud claims and the section 335.1 two-year limitations period for claims of intentional infliction of emotional distress. The trial court granted the motion and entered judgment in Centi's favor.

On appeal, Chaudhary contends that the trial court erred in finding that his action was untimely filed in July 2012 since the complaint's allegations show that he could not have discovered the facts underlying his claims until he met K. in January 2012. Chaudhary also contends that the trial court abused its discretion in denying leave to amend the complaint. For the reasons stated below, we find no merit in Chaudhary's contentions and therefore we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Termination of Parental Rights*

Chaudhary was married to Sudha Chaudhary.[3] Their daughter, K., was born in 1981. On May 22, 1986, the couple became involved in an argument regarding their marital dissolution and custody issues. During the course of the argument, Chaudhary became outraged and killed Sudha by shooting her five times at close range. Chaudhary pleaded no contest to second degree murder and began serving a state prison term of 17 years to life in 1987. He was released on parole in 2005. (*In re Chaudhary*, *supra*, 172 Cal.App.4th at p. 34.)

After the death of her mother and the incarceration of her father, K. was the subject of juvenile dependency proceedings. (*In re K.* (Super. Ct. Santa Clara County, 1989, No. 91473).) In 1989, Chaudhary voluntarily relinquished his parental rights to K.,

---

[1] All statutory references hereafter are to the Code of Civil Procedure unless otherwise indicated.

[2] Our summary of the factual and procedural background includes some information that we have taken from our prior opinion in *In re Chaudhary* (Jan. 20, 2005, H027084) [nonpub. opn.].)

[3] We will refer to Sudha Chaudhary by her first name for reasons of clarity and not out of disrespect.

who was then adopted by Centi.  (*Chaudhary v. O'Neil* (9th Cir. Nov. 30, 1995, No. 94-15408) 70 F.3d 1277 [1995 U.S.App. LEXIS 35313, *2].)  After Chaudhary relinquished his parental rights, he began challenging the termination of his parental rights and the adoption proceedings in state and federal courts.  (*Id*. at pp. *2-*3.)

**B.  *Federal Action***

We take judicial notice of the complaint that Chaudhary filed in 1993 against Centi (sued as Deborah Swanson) and Richard O'Neil[4] in the federal court.  (*Chaudhary v. O'Neil,* U.S.D.C., N.Cal., No. C-93-20967, complaint filed Dec. 20, 1993).[5]  (Evid. Code, § 452, subd. (d)(2).)

In his federal complaint, Chaudhary alleged that Centi was K.'s court-appointed guardian in 1987 when K. was placed with a family in Connecticut.  K. had problems in the Connecticut placement that Centi allegedly kept secret from Chaudhary.  In 1989, Chaudhary learned that K. had been "beaten and abused" in Connecticut.

Chaudhary claimed that he had relinquished his parental rights to K. under duress and that K. "was given for adoption to an unwed woman [Centi] who had no children and had no experties [*sic*] in parenting a Hindu child.  False assurances were given that [Chaudhary] would maintain contacts with his daughter.  False assurances were given that religious and cultural education and exposure will be provided to [K.] in her own Hindu faith and culture."  According to Chaudhary, after Centi adopted K., she failed to

---

[4] The federal complaint names Richard O'Neil as "Director Social Service Agency Santa Clara County."

[5] Under the Evidence Code, we take judicial notice of matters properly noticed by the trial court, and may take notice of any matter specified in Evidence Code section 452. (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1223-1224.)  Evidence Code section 452, subdivision (d)(2) provides that we may take judicial notice of federal court records.  (See *People v. $25,000 United States Currency* (2005) 131 Cal.App.4th 127, 131, fn. 2.)

provide K. with Hindu religious and cultural education. Centi also "was preying on the child in order to gain controll [*sic*] over the child and [the] child's large inheritance."

The relief sought by Chaudhary in his federal action included placement of K. in a Hindu home; restoration of his parental rights; contact with K.; the provision of Hindu education, culture, and therapy to K.; and the recovery of the "financial plundering of [K.'s] estate." Chaudhary also sought damages for civil rights violations, the physical and emotional abuse suffered by K., and the "[e]motional distress caused to [Chaudhary] and his family."

We also take judicial notice under Evidence Code section 452, subdivision (d)(2) of the federal court records showing that the United States District Court ordered dismissal of Chaudhary's action in 1994. (*Chaudhary v. O'Neil*, *supra*, No. C-93-20967.) The dismissal order was upheld on appeal. (*Chaudhary v. O'Neil, supra,* 70 F.3d 1277 [1995 U.S.App. LEXIS 35313 at pp. *8-*9].)

**C.** *Present Action*

Chaudhary filed the complaint in the present action on July 10, 2012. A summary of the complaint's allegations regarding Centi's adoption and rearing of K. follows.

Chaudhary was incarcerated in 1986 and Centi was appointed K.'s guardian. At that time, Chaudhary wanted K. to be placed in the home of his friends from IBM. He tried to prevent K. from being placed in Centi's home after K. was removed from her first placement. In 1987, K. was placed in the Connecticut home of the Taylor family.

Chaudhary believes that Centi did not want to keep K. for herself until she discovered that K. was going to inherit a large amount of money and would also receive insurance proceeds from her mother's estate as well as Social Security benefits. According to Chaudhary, Centi then embarked on a scheme to sabotage K.'s placement with the Taylors. She also lied to Chaudhary's attorney when the attorney inquired about whether K. was experiencing any problems with the Taylors. Centi reported that

4

everything was going well with the Taylors although K. was being abused and mistreated.

Chaudhary also believes that when K. was removed from her placement with the Taylors, Centi proposed herself as the adoptive parent "in a selfish effort to get her hands on [K.'s] money and obtain money that would be paid to [her] as a foster parent, and subsequently as [an] adoptive parent." Centi and Chaudhary had a conversation in which he told her that he did not want her to adopt K. Chaudhary objected to Centi because she "was a single Caucasian woman" who did not meet the social worker's recommendations.

According to Chaudhary, Centi achieved her adoption of K. by means of deceit and manipulation. Centi proposed that Chaudhary voluntarily relinquish his parental rights in exchange for her promises that (1) she would ask K. to visit him several times per year on a regular basis; (2) she would encourage K. to write to him at least once a month and maintain telephone contact with him; (3) she would act in K.'s best interest and protect her financial assets; (4) she would provide K. "with the best things available and [a] good environment;" (5) she would provide K. "with the very best education;" (6) she would provide K. with "religious and cultural continuity in her own faith and culture;" and (7) she would enroll K. in the Hindu temple in Fremont, California, and provide religious and cultural education. Centi also told Chaudhary that K. would be returned to her placement with the Taylors if he objected to Centi's adoption. Chaudhary decided to give up his parental rights and forgo his objection to Centi's adoption of K. based upon Centi's promises.

When Chaudhary was released from prison in 2005, he was prohibited from contacting K. and Centi as a condition of his parole. The no-contact restriction was lifted in 2010. Chaudhary then began an investigation of K.'s whereabouts. In 2011, Chaudhary had a telephone conversation with K. and then met her in a restaurant. K. was reluctant to speak openly with Chaudhary and he did not learn that Centi had treated K.

5

poorly until he was telephoned by Bob Schmitz, the father of one of K.'s friends. Schmitz told Chaudhary that Centi had thrown K. out of her house and K. had been given shelter by Schmitz and his wife.

In January 2012, Chaudhary met with K. and K.'s therapist. At that time, Chaudhary "truly learn[ed] that [Centi] had failed to live up to any of her promises." He is informed and believes that K. received jewelry and insurance proceeds from her mother's estate and that Centi used them for her own benefit. By 2012, K. was unable to support herself and her education had been undermined since she had to work two jobs and do babysitting.

Based on these allegations, Chaudhary asserted causes of action for fraud, constructive fraud, and intentional infliction of emotional distress. Chaudhary stated that his action was timely filed because he did not discover Centi's wrongdoing until he was able to speak with K. in January 2012.

### D. *Motion for Judgment on the Pleadings*

Centi answered the complaint and filed a motion for judgment on the pleadings. Her motion was accompanied by a request for judicial notice of the federal court records in *Chaudhary v. O'Neil*, *supra*, No. C-93-20967, and *Chaudhary v. O'Neil*, *supra*, 70 F.3d 1277. Centi also requested judicial notice of several other documents, including various state court records and the reporter's transcript of the proceedings held in K.'s juvenile dependency action (*In re K.*, *supra*, No. 91473) on February 27, 1989 and May 13, 1989.

In her points and authorities, Centi argued that Chaudhary's fraud causes of action were barred under the three-year statute of limitations set forth in section 338, subdivision (d). She asserted that when Chaudhary's 1993 federal complaint was compared with the 2012 complaint filed in this action, it was apparent that Chaudhary had made the same allegations of "fraud, deceit, abuse, alienation, and money squandering" against Centi in 1993 and therefore his state court action should have been

6

filed no later than 1996. For the same reason, Centi argued that the cause of action for intentional infliction of emotional distress was time-barred under the two-year statute of limitations provided by section 335.1 for personal injury actions.

Additionally, Centi contended that Chaudhary's state court action was barred under the doctrine of res judicata since his claims had been found to be meritless due to the dismissal of his federal court action against Centi and the denial of relief in his state court challenges to the termination of his parental rights. Centi also contended that Chaudhary lacked standing because his claims were based solely on the harm allegedly suffered by K.

Chaudhary opposed the motion for judgment on the pleadings, arguing that his complaint was timely filed because the complaint's allegations must be accepted as true and therefore the statute of limitations did not begin to run until 2012, when he learned during his meeting with K. that Centi had failed to keep her promises. Chaudhary also argued that the 1993 federal complaint did not show that he had discovered facts or evidence to support his claims at that time. He maintained that it is question of fact as to whether he was placed on notice in 1993 that Centi had engaged in fraud, which cannot be resolved at the pleading stage.

Chaudhary rejected the other two grounds for judgment on the pleadings argued by Centi in her motion. He argued that his federal and state causes of action alleged different causes of action and therefore the doctrine of res judicata could not apply. As to standing, Chaudhary asserted that he had standing to claim that Centi's fraud caused him to give up his parental rights and suffer emotional distress.

### E.  *Trial Court Order*

The trial court granted Centi's motion for judgment on the pleadings without leave to amend in its March 12, 2013 order. The court also granted her request for judicial notice.

7

Regarding judicial notice, the trial court stated that although the court did not take judicial notice of the truth of the allegations in the 1993 federal complaint, "the Court may take note of those allegations for purposes of comparison with the present Complaint to determine if the statute of limitations has run on the claims made in the present Complaint." The court also determined that the reporter's transcript of the 1989 juvenile dependency proceedings "demonstrates [Chaudhary's] express acknowledgment in court in 1989 that no promises were being made to him as part of his voluntary relinquishment of parental rights and [Chaudhary's] understanding that [Centi] was under no obligation to him, did not owe him any duty of care and that specific matters of concern to [Chaudhary] regarding his biological daughter's upbringing would be completely within the discretion of [Centi] once [he] relinquished his parental rights." However, the court found that the judicially noticed court records did not establish that the present action was barred under the doctrine of res judicata.

The trial court granted the motion for judgment on the pleadings on the grounds that the judicially noticeable material showed that each cause of action in the complaint was time-barred. The court found that "[t]he judicially noticeable material, in particular [Chaudhary's] 1993 federal complaint (making nearly identical allegations) and the transcripts of the court hearings in 1989 (where [Chaudhary] acknowledged that no promises were being made to him in relation to his voluntary relinquishment of parental rights and that [Centi] was under no obligation to [him]) [to] establish that [Chaudhary] was aware of the basis for each of his claimed injuries and causes of action by no later than December 20, 1993 and all three claims were time barred long before his present Complaint was filed on July 10, 2012." The trial court further determined that Chaudhary's allegations were "not sufficiently specific" to toll the statute of limitations under the delayed discovery rule.

The trial court denied leave to amend the complaint, finding that Chaudhary could not amend his complaint to further allege delayed discovery because such allegations

8

would be inconsistent with the judicially noticed facts showing that Chaudhary was aware of the alleged factual basis for his claims at the time he filed his federal complaint. Leave to amend was also denied because Chaudhary's fraud allegations were "completely contradicted by his stated understandings and admissions as to the scope and consequences of his voluntary relinquishment of parental rights on the record at the [1989 juvenile dependency] hearings."

Finally, the trial court concluded as a matter of law, based on the 1989 reporter's transcripts of the juvenile dependency proceedings, that any emotional distress that Chaudhary suffered as a result of relinquishing his parental rights "was proximately caused by his own voluntary act."

A judgment in Centi's favor was entered on April 5, 2013. Chaudhary subsequently filed a timely notice of appeal from the judgment.

## III.  DISCUSSION

On appeal, Chaudhary argues that the trial court erred in granting the motion for judgment on the pleadings on statute of limitations grounds because the complaint's allegations show that the action was timely filed in July 2012, since he was not aware of the facts putting him on notice that Centi had broken her promises until he met with K. in January 2012. Alternatively, Chaudhary argues that the trial court abused its discretion in denying leave to amend the complaint. We will begin our analysis with the applicable standard of review.

### A.  *Standard of Review*

"Since 1994, motions for judgment on the pleadings have been authorized by statute. (Stats. 1993, ch. 456, § 5, pp. 2524-2527, adding . . . § 438; Stats. 1994, ch. 493, § 2, amending . . . § 438.) Previously, they were allowed by common law. [Citations.] Generally, as such motions were, so they remain." (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 482, fn.2.)

9

" 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166; see also *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.) Since a motion for judgment on the pleadings serves the same function as a demurrer, judgment on the pleadings may be properly granted on the ground that the action is time-barred under the applicable statute of limitations. (See *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1150-1151.)

**B.** *Statute of Limitations*

The California Supreme Court has established the rules governing the affirmative defense of the statute of limitations. A statute of limitations prescribes the period "beyond which a plaintiff may not bring a cause of action. [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) It "strikes a balance among conflicting interests. If it is unfair to bar a plaintiff from recovering on a meritorious claim, it is also unfair to require a defendant to defend against possibly false allegations concerning long-forgotten events, when important evidence may no longer be available." (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797.)

A statute of limitations may be "tolled when a plaintiff is a minor or has disabilities or when a defendant is absent from the jurisdiction or in other comparable situations. [Citations.]" (*Don Johnson Productions, Inc. v. Rysher Entertainment, LLC* (2012) 209 Cal.App.4th 919, 934.) Although overlooked by the parties, we note that section 352.1 provides for limited tolling of the statute of limitations when the plaintiff is incarcerated.

"Former section 352, subdivision (a)(3) provided that the statute of limitations was tolled if plaintiff, at the time of accrual of the claim, was 'imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life . . . .' [¶] Effective January 1, 1995, the Legislature amended section 352 to delete the tolling provision and added section 352.1 to limit the tolling period to two years. (§ 352, as amended by Stats. 1994, ch. 1083, § 1, p. 6465.)" (*Carlson v. Blatt* (2001) 87 Cal.App.4th 646, 649 (*Carlson*).)

Section 352.1, subdivision (a) provides: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, *not to exceed two years*." (Italics added.) "The Legislature, in enacting section 352.1, declared that it 'intends to limit the ability to bring lawsuits by prisoners when the facts that give rise to the lawsuit are old, and difficult to prove or disprove.' (§ 352.1, as amended by Stats. 1994, ch. 1083, § 1, p. 6465.)" (*Carlson*, *supra*, 87 Cal.App.4th at p. 649; see also *Belton v. Bowers Ambulance Service* (1999) 20 Cal.4th 928, 930-931 [§ 352.1 is a tolling provision]; *Rose v. Hudson* (2007) 153 Cal.App.4th 641, 656 [§ 352.1 places a two-year limit on tolling due to incarceration]; *Deutch v. Hoffman* (1985) 165 Cal.App.3d 152, 156 [no tolling occurs when the plaintiff is on parole].)

In the present case, Chaudhary contends that the trial court erred in finding that the judicially noticed state and federal court records show that Chaudhary's complaint was time-barred under the applicable statutes of limitation. We therefore turn to an overview of the pertinent rules governing judicial notice of court records.

### C. *Judicial Notice*

Evidence Code section 452, subdivision (d) authorizes judicial notice of court records. " 'The court may in its discretion take judicial notice of any court record in the

11

United States.  [Citation.]  This includes any orders, findings of facts and conclusions of law, and judgments within court records.  [Citations.]  However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files.' [Citation.]" (*In re Vicks* (2013) 56 Cal.4th 274, 314.)

In addition, **"**[b]oth trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case *and other cases.*  (Evid. Code, § 452; . . . § 430.70; [Citations.].)  The complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary.'  [Citation.]  A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.  [Citation.]  Likewise, the plaintiff *may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false.*  [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 (*Cantu*).)

We next consider the merits of Centi's motion for judgment on the pleadings as to each cause of action in Chaudhary's complaint.

### D.  *Fraud and Constructive Fraud*

On appeal, Chaudhary argues that his causes of action for fraud and constructive fraud[6] are not time-barred because the court erred in taking judicial notice of the truth of statements in court records, and must instead accept as true the allegations in his complaint that he did not discover the facts putting him on notice of Centi's broken

---

[6] " 'Constructive fraud "arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his [or her] prejudice." [Citation.]' " (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1131.)

promises until he met with K. in January 2012. Alternatively, Chaudhary claims that he could not investigate the facts supporting his fraud causes of action because he was incarcerated.

Centi responds that the trial court correctly ruled that Chaudhary's action was barred by the applicable statutes of limitation because the allegations in Chaudhary's 1993 federal complaint show that he had sufficient information to suspect a factual basis for his fraud claims at that time, and therefore the limitations period commenced in 1993. We agree that Chaudhary's fraud causes of action are barred by the applicable statutes of limitation.

The limitations period for a cause of action for fraud is three years. (§ 338, subds. (a) & (d).). Section 338, subdivision (d) provides: "An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The California Supreme Court has ruled that the limitations period for a fraud cause of action commences when the plaintiff discovers or reasonably should have discovered the facts constituting the fraud. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 873 (*Miller*) [construing former § 338, subdivision (4), now (d)].) Further, "[i]n order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra,* 35 Cal.4th at p. 809.)

Our Supreme Court has also instructed that the word "discovery" in section 338, subdivision (d) "is not synonymous with actual knowledge. [Citation.] 'The statute commences to run . . . after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him [or her] on inquiry.' " (*People v. Zamora* (1976) 18 Cal.3d 538, 561-562 [construing former section 338, subdivision (4),

13

now (d); see also *Magnolia Square Homeowners Assn. v. Safeco Ins. Co*. (1990) 221 Cal.App.3d 1049, 1056-1057 [judicial notice properly taken of allegations in prior action's complaint showing that the plaintiff homeowners association had notice of structural defects at an earlier time].)

We have properly taken judicial notice of the 1993 complaint in Chaudhary's federal action (*Chaudhary v. O'Neil, supra,* No. C-93-20967), keeping in mind that Chaudhary may not plead facts in the present action that contradict the facts or positions that he alleged in the federal complaint, and may not suppress facts that prove the pleaded facts false. (See *Cantu*, *supra*, 4 Cal.App.4th at pp. 877-878.) Having reviewed both the complaint in the present action and Chaudhary's 1993 federal complaint, we find that the allegations in the federal complaint show that Chaudhary discovered the facts underlying his fraud claims against Centi no later than 1993.

In the 1993 federal complaint, Chaudhary alleged that he had relinquished his parental rights to K. under duress and that K. "was given for adoption to an unwed woman [Centi] who had no children and had no experties [*sic*] in parenting a Hindu child. *False assurances* were given that [Chaudhary] would maintain contacts with his daughter. *False assurances were given* that religious and cultural education and exposure will be provided to [K.] in her own Hindu faith and culture." (Italics added.) Chaudhary also alleged that after Centi adopted K., she *failed* to provide K. with Hindu religious and cultural education, and "prey[ed] on the child in order to gain controll [*sic*] over the child and [the] child's large inheritance." (Italics added.)

In the July 2012 complaint in the present action, Chaudhary alleges that he learned for the first time in 2011 that Centi had treated K. poorly. He then allegedly learned in January 2012, after meeting with K. and her therapist, that Centi had failed to keep her promises to encourage K. to maintain contact with him and to provide K. with exposure to her own religion and culture, and had also used money for her own benefit that was owed to K. from insurance proceeds and her mother's estate. Chaudhary further alleges

14

that Centi made these promises "to get [Chaudhary] to waive his parental rights and allow [Centi] to adopt his Child."

Our comparison of the two complaints shows that Chaudhary has made essentially the same factual allegations regarding Centi's wrongdoing in his 1993 federal complaint and in his complaint in the present action: that Centi made specific promises to him that were false (that K. would maintain contact with Chaudhary and be exposed to Hindu religion and culture) for the purpose of inducing Chaudhary to relinquish his parental rights and to allow her to adopt K., and for the additional purpose of obtaining monies owed to K. for herself. Chaudhary's allegations in his complaint in the present action—that he did not discover until 2012 that Centi had broken these promises—therefore directly contradicts his prior factual allegations in the 1993 federal complaint that he was aware in 1993 that Centi's promises were false.

Under the principle of truthful pleading, "[w]hen the plaintiff pleads inconsistently *in separate actions,* the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer. [Citations.] Under such circumstances, the court will disregard the falsely pleaded facts and affirm the demurrer." (*Cantu*, *supra*, 4 Cal.App.4th at pp. 877-878.) Since a motion for judgment on the pleadings serves the same function as a demurrer, we may disregard the allegations in the complaint in the present action that Chaudhary did not discover that Centi had broken her promises about K. until 2012.

Accordingly, we determine that the judicially noticeable factual allegations in the federal complaint show that Chaudhary discovered the facts constituting Centi's alleged fraud no later than 1993, when he filed the federal complaint. (See *Miller*, *supra*, 33 Cal.3d at p. 873.) The three-year limitations period provided by section 338, subdivision (d) for a fraud claim therefore began to run in 1993. Under section 352.1, subdivision (a), the three-year limitations period was tolled for two years due to Chaudhary's incarceration. (See *Carlson*, *supra*, 87 Cal.App.4th at p. 650 [under § 352.1

15

claims that accrued before January 1, 1995 are tolled for two years from accrual, or until January 1, 1995, whichever occurs later].)

With the two-year tolling period included, the limitations period for Chaudhary's fraud claims against Centi was five years from the commencement of the section 338, subdivision (d) limitations period in 1993. The limitations period therefore expired in 1998. Since Chaudhary did not file the complaint in the present action until 2012, we conclude that the fraud causes of action are time-barred and judgment on the pleadings was properly granted.

### E. *Intentional Infliction of Emotional Distress*

In his cause of action for intentional infliction of emotional distress, Chaudhary alleges that Centi's failure to keep her promises regarding K. caused him to suffer "extreme mental anguish and emotional and physical distress." Centi argues that the cause of action is time-barred because Chaudhary alleged intentional infliction of emotional distress in his 1993 federal complaint.

The two-year statute of limitations set forth in section 335.1[7] applies to a cause of action for intentional infliction of emotional distress. (*Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1450.) "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant. [Citation.]" (*Cantu*, *supra*, 4 Cal.App.4th at p. 889; see also *Kisekey v. Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 232.)

Chaudhary did not address that portion of the trial court's order granting judgment on the pleadings as to the cause of action for intentional infliction of emotional distress in his opening and reply briefs. He has therefore forfeited any issue as to that cause of

---

[7] Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

action.  (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4; *Sanchez-Scott v. Alza Pharmaceuticals* (2001) 86 Cal.App.4th 365, 368.) Even assuming the issue is not forfeited, we would find that the trial court did not err in granting judgment on the pleadings.

In his 1993 federal complaint, Chaudhary expressly sought damages for the emotional distress caused by Centi's wrongdoing in connection with K.  The cause of action for intentional infliction of emotional distress therefore accrued, and the limitations period of two years provided by section 335.1 began to run, in 1993.  (See *Cantu*, *supra*, 4 Cal.App.4th at p. 889.)  Since the section 335.1 limitations period was tolled for two years under section 352.1 due to Chaudhary's incarceration, the limitations period was increased to four years and expired in 1997.  The cause of action for intentional infliction of emotional distress included in Chaudhary's 2012 complaint in the present action was therefore time-barred and the trial court properly granted judgment on the pleadings.

### F.  *Leave to Amend*

Finally, Chaudhary contends that the trial court erred in denying him leave to amend his complaint.  Chaudhary argues that he could amend the complaint to cure any defect by adding the allegations "that at the time that he brought [the 1993 federal] complaint, he was incarcerated and had no ability to discover a factual basis for his claims.  The 1993 [federal] complaint was based on mere suspicions, without any factual basis to support [his] claims."  Chaudhary would also amend the complaint by alleging that he could not determine that Centi had breached the promises she made to him regarding K. "until he made contact with his daughter."

Centi disagrees.  She argues that the trial court properly determined that Chaudhary would not be able to amend his complaint to avoid the judicially noticeable facts that Chaudhary has made substantially the same claims in the present action that he

17

made in his 1993 federal complaint, which shows that Chaudhary was aware of the basis for his claims in 1993.

The rules governing leave to amend are well established. "When a general demurrer is sustained or a motion for judgment on the pleadings is granted, the plaintiff must be given leave to amend his or her complaint when there is a reasonable possibility that the defect can be cured by amendment. [Citations.] 'The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.] [¶] 'To satisfy that burden on appeal, a plaintiff "must show in what manner he [or she] can amend his [or her] complaint and how that amendment will change the legal effect of his [or her] pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden.' [Citation.]" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.)

Moreover, "leave to amend need not be granted if any possible amendment would inevitably be barred by the statute of limitations." (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1011.) That is the situation in the present case. The amendments proposed by Chaudhary would not change the legal effect of his allegations in the 1993 federal complaint, which, as we have determined, show that Chaudhary discovered the facts underlying his fraud claims against Centi no later than 1993 and also suffered emotional distress caused by Centi's alleged wrongdoing in 1993. In other words, the proposed amendments are not sufficient to demonstrate that the complaint in the present action was timely filed within the applicable statutes of limitation.

We therefore determine that the court did not abuse its discretion in denying Chaudhary leave to amend the complaint. Having also determined that the trial court properly granted Centi's motion for judgment on the pleadings on the ground that the action is time-barred under the applicable statutes of limitation, we will affirm the judgment in Centi's favor. Since we have affirmed judgment on the pleadings on the statute of limitations issue, we need not address the issues Centi raises regarding standing and the application of the doctrine of res judicata.

18

## IV.  DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MÁRQUEZ, J.

_____

GROVER, J.