Filed 9/8/22  Stuart v. Warner CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK STUART,<br><br>      Petitioner and Appellant,<br><br>v.<br><br>DARLA WARNER, et al.,<br><br>      Respondents. | A161192<br><br>(Alameda County<br>Super. Ct. No. RP13-674421) |

Petitioner Frank Stuart appeals from an order sustaining the demurrers without leave to amend of respondents Darla Warner, Jerry Aguiar and Wendi Greb to Frank's[1] August 12, 2019, petition filed under Probate Code sections 850 and 859.  Frank asserts that the probate court abused its discretion by denying him an opportunity to amend his petition to cure the timeliness defects in his claims.  He also contends that the court compounded its error by refusing to shorten time on a post-order motion to vacate and reissue the order.  We conclude the court did not abuse its discretion in failing to grant leave to amend and affirm.

---

[1]  Because some of the family members referenced in this opinion have the same surname, we use their first names for clarity.  No disrespect is intended.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

Frank, Pam Horton, and Cheryl Sarchet are the adult children of decedent Franklin Gerald Stuart. Franklin and Carolyn Kay Stuart were married in June 1977. Pam, Frank, and Cheryl are Carolyn's step-children.

In September 1996, Franklin and Carolyn, acting as settlors and co-trustees, created a marital trust named the Franklin Gerald and Carolyn Kay Stuart Family Trust (Stuart Trust). Franklin and Carolyn were to act as initial co-trustees, with the survivor continuing as the sole trustee after the first spouse's death. Frank, Pamela, and Cheryl were named as successor beneficiaries and first successor trustees. One of the assets held by the Stuart Trust was a four-unit apartment building located in San Leandro (the Property).

At the death of the first spouse, the Stuart Trust directed that standard decedent and survivor ("A-B") trusts would be created if needed for tax purposes (i.e., if the trust estate exceeded the federal estate tax exemption).[2] The relevant Stuart Trust provision stated that upon the death of either Franklin or Carolyn, an irrevocable decedent's trust would be funded "with the lesser of one half of the [Stuart] Trust estate at the time of the decedent's death or an amount equal to the equivalent Federal Estate Tax Exemption that is in effect in the year of said decedent's death." The remaining assets of the Stuart Trust would fund a trust for the surviving spouse. Following the death of the surviving spouse, all assets in the decedent's trust, and any

---

[2] An A-B trust is "[a] trust into which just enough of a decedent's estate passes, so that the estate can take advantage of the unified credit against federal estate taxes." (Black's Law Dict. (11th ed. 2019) at p. 1818, "bypass trust" (also termed "A-B trust").)

assets remaining in the survivor's trust, were to be poured over into a successor beneficiaries trust.[3]

In 2010, Franklin was hospitalized with a serious, but unspecified ailment. While hospitalized, he executed a will (the 2010 Will). Franklin died in February 2012.

## B. Litigation Commences

The procedural background of this case is both lengthy and confusing, as it involves several overlapping related proceedings.

In April 2013, Frank initiated the underlying proceeding by filing a "Petition for Instructions Regarding Interpretation of the Trust . . . [,] Accounting and Other Alternative Relief." (Some capitalization omitted.) Frank alleged that the Stuart Trust's assets exceeded the applicable federal estate tax exemption, and asserted that Carolyn had committed multiple breaches of the Stuart Trust by (1) failing to fund the decedent's and survivor's trusts, (2) designating the Stuart Trust estate as her separate surviving trust, and (3) transferring the Stuart Trust's assets to herself. Carolyn countered that she was not required to fund two separate trusts because the Stuart Trust's assets did not exceed the federal estate tax exemption at the time of Franklin's death.[4] Later that same month, Frank filed a demand for arbitration pursuant to the terms of the Stuart Trust. All parties thereafter agreed to submit the dispute to binding arbitration.[5] In

---

[3] The Stuart Trust also enumerates specific monetary gifts to various individuals, including two of the respondents in this appeal.

[4] In his petition, Frank represented that the federal estate tax exemption was $5,125,000 when Franklin died.

[5] American Arbitration Association Case No. 74-101-192-13.

March 2014, Frank filed a first amended demand for arbitration in the arbitration proceeding.

In August 2014, Carolyn, Frank, Pamela, and Cheryl settled the arbitration proceeding by entering into a written settlement agreement (Settlement Agreement). The Settlement Agreement provided that Frank, Pam, and Cheryl would be paid $1.34 million. In exchange they released "each and every past claim and cause of action, . . . which the Parties have, had or claim to have against any other of the Parties under the [Stuart Trust], or any trust created thereunder, or any will including the 2010 Will (The 'Will')." Pursuant to the Settlement Agreement, the parties expressly released any claims that had been made or could have been made during the probate court and arbitration proceedings with respect to both the Stuart Trust and the 2010 Will. They also waived their rights under Civil Code section 1542.[6] Frank and his sisters also waived their rights to any further Stuart Trust accounting and relinquished any interest in the Property. The terms of the Agreement were incorporated into an arbitration award issued on September 29, 2014.

In October 2014, Carolyn created her own separate trust (Carolyn Trust) which she funded with the remaining Stuart Trust assets, including the Property. Respondents are beneficiaries of the Carolyn Trust. Warner was designated as the successor trustee of the Carolyn Trust.

---

[6] At the time the Settlement Agreement was executed, former Civil Code section 1542, as amended (Stats. 2018, ch. 157, § 2) provided: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which, if known by him or her must have materially affected his or her settlement with the debtor."

In January 2016, Carolyn executed a will in which she made several small bequests to friends and family. She specifically bequeathed to Frank, Pamela, and Carolyn exactly one dollar each, and bequeathed the residue of her estate, including the Property, her jewelry, and bank accounts to Warner, her longtime friend.

In connection with a separate arbitration proceeding relating to administration of the Stuart Trust that had been brought by other Stuart Trust beneficiaries, in February 2016, Carolyn submitted a first accounting of the Stuart Trust for the period February 8, 2012, to December 31, 2015.[7] The accounting disclosed that the Stuart Trust's assets had totaled approximately $3.8 million when Franklin died in 2012 and currently stood at approximately $2 million. The accounting also shows payments to beneficiaries Frank, Pam, Cheryl and others of $1.5 million. Carolyn died two months later, in April 2016. Thereafter, in a separate action (*The Estate of Carolyn K. Stuart,* Alameda County Superior Court No. RP16817293), Frank and his sisters brought a will contest alleging that Carolyn's 2016 will was executed under the undue influence of Warner and/or Aguiar.

While the will contest was pending, Michael Major filed a petition against respondents (Major's Petition). Major asserted that he was a beneficiary under Franklin's 2010 Will, which he claimed had amended the Stuart Trust's dispositive provisions. Major was represented by the same attorney who represented Frank and his sisters below.

In October 2018, the judge in the will contest action rejected Frank's challenge to Carolyn's will and admitted the will into probate.

---

[7] American Arbitration Association Case No. 01-14-0001-5247 Gayle Nicholson, et al. v. Carolyn Kay Stuart, Trustee of the Stuart Family Trust.

In February 2019, Warner filed a petition in this action seeking to be appointed as the Stuart Trust's successor trustee.

In April 2019, Frank filed a petition seeking instructions and confirmation pursuant to Probate Code section 9611. In his petition, he alleged that he was "the duly appointed, qualified, and acting Trustee of [the Stuart Trust]." Among other things, he sought approval of the 2010 Will "as Franklin Stuart's amendment to the 1996 Trust."

On May 30, 2019, the probate court issued its statement of decision following the trial on Major's Petition. The court found that after Franklin returned home from his 2010 hospitalization, he personally made gifts generally consistent with his 2010 Will. Franklin thereafter decided that the 2010 Will was no longer relevant and destroyed it with the intention to revoke it. On that basis, the court concluded that the 2010 Will had not amended or revoked the Stuart Trust, and also found that the copy of the will proffered by Major was inauthentic. The court also held that all of the assets held in the Stuart Trust had been commuted to community property. The court further found that Warner did not owe any duty to Major or to any of the other Stuart Trust beneficiaries because she was not the trustee of the Trust.

Subsequently, Warner filed an opposition to Frank's April 2019 petition, urging the probate court to reject Frank's allegations concerning the effect of the 2010 Will in light of the court's findings in Major's case. She also asserted that, under the Settlement Agreement, Frank had waived any right to serve as a trustee of the Stuart Trust.

In June 2019, Frank filed an ex parte application to stay or continue the proceedings in order to allow him to seek orders under the Settlement Agreement. Frank argued that Warner, in her February 2019 petition, had

6

alleged for the first time that she was Carolyn's successor, entitling him to pursue further arbitration proceedings against her. During a hearing held the following day in which the probate court refused to issue a stay and indicated that it was inclined to deny both Warner's and Frank's pending petitions, the parties agreed to dismiss their respective petitions without prejudice.

## C.    The Operative Petition is Filed

On August 12, 2019, Frank filed the operative petition for return of trust property under Probate Code sections 850, subdivision (a)(3)(B) and 859 (Section 850 Petition). He claimed he was seeking "relief to garner all assets of the [Stuart Trust] and distribute the [Stuart] Trust to the [Stuart Trust's] beneficiaries." Contrary to the probate court's findings on Major's Petition, Frank again invoked the 2010 Will and asserted that his father "never intended to transmute his separate property to community property." Frank further alleged that "[i]t is apparent from Carolyn's first accounting . . . that in 48 months from date of death of Franklin . . . with the help of or at the direction of certain persons, including but not limited to [respondents] jointly, severally and collectively 'Conspirators' helped make and carry out a plan to remove at least $1,400,000 of principal assets for their own financial benefit. . . ." Frank sought a court order compelling Warner to transfer the Property to him and his sisters and to turn over "all Trust assets, income from said assets, and records relating to said assets" as set forth in Carolyn's first accounting. He also sought an accounting, a finding that respondents had breached fiduciary duties owed to him, and the imposition of a constructive trust and a preliminary injunction. Finally, he asserted a claim for financial elder abuse on behalf of Carolyn.

On August 26, 2019, Frank filed a renewed petition for instructions and confirmation under Probate Code section 9611. In this petition, he again identified himself as the Stuart Trust's trustee and requested instructions to distribute the Stuart Trust's assets based on the alleged 2010 Will amendment.

## D. Respondents' Demurrers Are Sustained

Warner demurred to both of Frank's petitions. As to the Section 850 Petition, she argued that it failed to state a claim against her because it was filed after the relevant statutes of limitations had expired and was barred under the Settlement Agreement. She also asserted that Frank's claims were barred by the doctrines of collateral estoppel and res judicata because the insufficiency of the 2010 Will to amend the Stuart Trust was conclusively determined in the May 2019 statement of decision on Major's Petition. Aguiar and Greb also filed a demurrer as to the Section 850 Petition. They argued that they did not owe any duty to Frank and asserted that his claims were untimely because he had alleged the same claims against them in 2013 when he filed his original petition.

On July 31, 2020, the probate court issued a statement of decision and an order in both the August 12, 2019, Section 850 Petition and in the August 26, 2019, Petition for Instructions sustaining the demurrers without leave to amend. On its own motion, the court suspended the Stuart Trust's current trustees and appointed an independent temporary successor trustee under Probate Code section 17206.

On September 24, 2020, the probate court denied Frank's ex parte application to shorten time on his proposed motion to vacate and reissue the

8

July 31, 2020, order.  Frank appealed *only* the order sustaining the demurrers to the August 12, 2019, Section 850 Petition.[8]

## II. DISCUSSION

### A.    Standard of Review

In testing the sufficiency of a pleading against a general demurrer, we ordinarily " 'examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory,' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768), liberally construing the complaint's allegations with a view to attaining substantial justice among the parties.[9]  If there is a reasonable possibility that the pleading, liberally construed, can state a cause of action, a demurrer should not be sustained without leave to amend.  (*Concerned Citizens of Costa Mesa, Inc. v. 32nd. Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 936.)

Because Frank does not appeal the dismissal of the claims his Section 850 Petition as pled or argue that we should review the sufficiency of those claims, we need not conduct a de novo review of the petition.  Frank's appeal instead focuses on the contention that the court abused its discretion in denying him leave to amend.  " 'While it is the plaintiff's burden to show "that the trial court abused its discretion" and "show in what manner he can

[8] Frank also purports to appeal from the September 24 order denying his ex parte application to shorten time.  Frank contends that the ex parte application is an appealable post-judgment order under Code of Civil Procedure section 904.1, subdivision (a)(1) and (2).  We disagree.  Nothing in Code of Civil Procedure section 904.1 authorizes an appeal of an ex parte application following judgment.  In any event, as noted above, a party may show on appeal for the first time how an amendment would cure a pleading defect.

[9] Respondents erroneously assert that the substantial evidence standard applies to our review.

amend his complaint and how that amendment will change the legal effect of his pleading" [citation], a plaintiff can make "such a showing . . . for the first time to the reviewing court" [citation].' " (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 (*Cantu*).)

## B. Frank's Proposed Amended Claims Are Not Viable

Frank states that in amending his petition, he "intends to eliminate allegations regarding any amendment of the 1996 Stuart Trust by Franklin's 2010 Will and any conspiratorial conduct by respondents before Carolyn's death." (Italics omitted.) With these changes, he asserts that he "can allege facts in support of at least four timely and otherwise valid claims." As we discuss below, Frank's efforts are unavailing as all of his proposed claims are time-barred.[10]

### 1. Claim To Interpret And Enforce The Trust

Frank first proposes to include a claim asking the probate court "to interpret and enforce the . . . Stuart Trust's terms, including with respect to his rights as successor trustee and named successor beneficiary notwithstanding Franklin's 2010 Will" He avers that such a claim is subject to a four-year statute of limitations for an action " 'founded upon an instrument in writing,' " presumably under Code of Civil Procedure section

---

[10] "Generally speaking, the claim underlying a section 850 petition in probate is subject to the same statute of limitations that would apply had an ordinary civil suit been brought." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874 fn. 5 (*Estate of Yool*).)

337 (he identifies the relevant provision as Code of Civil Procedure section 443, which is a nonexistent section). Code of Civil Procedure section 337, subdivision (a) applies a four-year statute of limitation to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing."

We first note that it is unclear whether the proposed claim is the proper subject of a Probate Code section 850 (section 850) petition. Section 850 is found within part 19, division two of the Probate Code, which addresses the "Conveyance or Transfer of Property Claimed to Belong to Decedent or Other Person." Under section 850, a trustee or any interested person "may file a petition requesting that the court make an order under this part: [¶] . . . [¶] Where the trustee has a claim to real or personal property, title to or possession of which is held by another." (§ 850, subd. (a)(3)(B).) "Section 850 et seq. provides a mechanism for court determination of rights in property claimed to belong to a decedent or another person." (*Estate of Young* (2008) 160 Cal.App.4th 62, 75.) Here, Frank's proposed claim, as best we understand it, seeks an order interpreting and enforcing the Stuart Trust in light of his asserted rights as a successor trustee and beneficiary. Therefore, the proposed claim appears to fall outside the scope of section 850.

Regardless, the claim is untimely. "The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. [Citations.] Traditionally, at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

Frank argues that his proposed claim is timely because his Section 850 Petition was filed in August 2019, less than four years after Carolyn's April 2016 death allegedly "left the administration of the 1996 Stuart Trust's terms in disarray." He further asserts that his claim is not precluded by the doctrines of res judicata or claim preclusion "because the administration of the . . . Stuart Trust after both settlors' death has never been raised or adjudicated." (Italics omitted.) Even accepting that this amended claim is not precluded, it is clear that a cause of action seeking to interpret and enforce the Stuart Trust had already accrued in April 2013, when Frank initiated this action by filing his petition for instructions.

A demurrer based on a statute of limitations is appropriate if the ground appears on the face of the complaint or from matters of which the court may or must take judicial notice. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745; Code Civ. Proc., § 430.30, subd. (a).) The existence and legal effect of documents in a court file are subject to judicial notice under Evidence Code section 452, subdivision (d). While a demurrer cannot be turned into an evidentiary hearing through the guise of having the court take judicial notice of factual matters in dispute (*Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, 660), courts "may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case and other cases." (*Cantu, supra,* 4 Cal.App.4th at p. 877, italics omitted.)

In Frank's 2013 petition, he sought an interpretation of the Stuart Trust's terms while also asserting that Carolyn had interfered with his rights and interests in the Stuart Trust. For example, he alleged that Carolyn, "without authority to do so, has transferred to and assumed the role of trustee of a separate survivor's trust for herself and has thereby breached the

12

terms of the Trust. . . ." He also requested instructions, stating that "[t]here are *now* conflicts between how [Carolyn] has interpreted the Trust and [Carolyn's and Franklin's] previous intentions to provide for [Franklin's] children at the time the Trust was executed by them. . . ." (Italics added.) Frank's proposed amended claim again seeks the interpretation and enforcement of the Stuart Trust based on an alleged interference with his rights and interests. However, it is apparent that this claim had already accrued by April 2013. Accordingly, the four-year statute of limitations under Code of Civil Procedure section 337 had expired before August 2019, when Frank filed his Section 850 petition. Thus, his proposed amended claim is time-barred. To the extent Frank purports to have new claims since Carolyn's death, he fails to specify on appeal any allegations as to how the Stuart Trust needs to be interpreted or enforced.

### 2. Claim for Declaratory Relief

Frank avers that he can state a workable amended claim for declaratory relief to determine the Trust's assets and their proper distribution. "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court." (*Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947.)

Frank contends that his amended claim is subject to a four-year limitations period, asserting that the claim accrued no earlier than February 2016, when Carolyn "disclosed the [Stuart Trust] assets on hand" in the accounting she filed in the other arbitration proceeding. On that basis, he argues that such a claim would have been timely when he filed his Section 850 petition in August 2019. Alternatively, he argues that the statute of

13

limitations has not yet accrued "because respondents have not formally repudiated" the February 2016 accounting.

We agree with Frank that the claim is subject to a four-year statute of limitations for actions on a written instrument. The limitations period for declaratory relief claims depends on the right or obligation sought to be enforced, and the statute of limitations "generally follows its application to actions for damages or injunction on the same rights and obligations." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 821; see *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1155 ["the statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim"].) As discussed above, Frank's Section 850 Petition concerned obligations or liabilities "founded upon an instrument in writing," namely, the Stuart Trust, and the applicable limitations period is four years. (Code Civ. Proc., § 337, subd. (a).)

We disagree with Frank's contention that the statute of limitations on the proposed claim accrued no earlier than when Carolyn submitted her first accounting in the unrelated arbitration proceeding in February 2016. Frank's proposed claim seeks declaratory relief under the terms of the Stuart Trust; *not* under Carolyn's February 2016 accounting. While the accounting may represent evidence of the Stuart Trust's assets at particular points in time, the document itself is not the basis of Frank's claim. Nor could he properly base a cause of action on the accounting, as the accounting itself is not a written "instrument."[11] Here, Frank purports to seek declaratory relief

---

[11] An "instrument" is "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." (Black's Law Dictionary (11th ed. 2019 p. 952, col. 1.)

14

as to the proper distribution of the Stuart Trust's assets. Thus, the actual controversy that underlies his claim for declaratory relief accrued when Frank became aware that his interests were adverse to Carolyn's interest. This occurred no later than April 2013 when Frank filed his first petition, which, among other things, included an action against Carolyn for breach of trust.[12] In sum, the proposed claim for declaratory relief is barred by the four-year statute of limitations under Code of Civil Procedure section 337.

### 3. Trustee *De Son Tort* Claim

Frank next contends that he can state a timely amended claim for breach of fiduciary duty against respondents as trustees *de son tort*.[13] The term "trustee *de son tort*" describes a person who is not an appointed trustee, but who becomes a trustee by effectively acting as one, i.e., a constructive trustee. (*King v. Johnston* (2009) 178 Cal.App.4th 1488, 1505–1506 (*King*).) A person may become a constructive trustee " 'by intermeddling with and assuming the management of property without authority,' " which makes them subject to the same rules and remedies as other trustees. (*Ibid.*) A court may impose trustee *de son tort* liability with respect to an individual's conduct in relation to all or part of the trust property. (*Id.* at p. 1506 & fn. 18.)

Frank asserts that his proposed claim accrued after Carolyn's death in April 2016, "when respondents first began to purport to have authority to

---

[12] Frank alternatively argues that the four-year limitations period has not begun to run, relying on cases, such as *Estate of Yool, supra,* 151 Cal.App.4th 867, that concern voluntary resulting trusts. This case does not appear to concern voluntary resulting trusts. Accordingly, the argument is inapt.

[13] A trustee *de son tort* is "Someone who, without legal authority, administers a living person's property to the detriment of the property owner." (Black's Law Dictionary (11th ed. 2019) p. 1826, col. 1.)

control or transfer the [Stuart Trust's] assets as agents or representatives for Carolyn." He maintains that he can amend his petition to allege that all respondents "have had wrongful possession and control of assets belonging to the [Stuart Trust] by virtue of being entrusted with such assets as executors, administrators, beneficiaries, or trustees of Carolyn's estate *following* her death." Relying on *King, supra,* 178 Cal.App.4th at page 1506, he argues that respondents should not be permitted to set up a statute of limitations defense at all, due to "their continuing breaches of fiduciary duties as trustees *de son tort*." (Italics added.) Even if a limitations defense is appropriate, he asserts that the catchall four-year period under Code of Civil Procedure section 343 should apply, regardless of the remedy he seeks.

In sustaining Warner's demur to Frank's Section 850 Petition, the probate court found that all of the stated causes of action, except the claim for elder abuse, were time-barred because they fell under the three-year statute of limitation under Code of Civil Procedure section 338.[14] The Section 850 Petition contained a claim against respondents for breach of trust as trustees *son de tort*. The court found that all of Frank's claims accrued in 2014, based on allegations contained in his March 2014 amended demand for arbitration which "not only makes clear [Frank's] knowledge of alleged improprieties with Carolyn's trust administration as early as 2014, but it also makes clear that [he] was aware that there may have been other 'co-conspirators' along with surviving settlor-trustee Carolyn as early as March 2014."

---

[14] Code of Civil Procedure section 338, subdivision (d) extends the three-year limitation period to "An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

On appeal, the substance of Frank's proposed amended claim is no different from the claim that the probate court found to be time-barred. Regardless of the allegations that Frank might have chosen to include (or not to include) in a proposed amended claim, the pleadings in this case establish that Frank's claim for breach of fiduciary duty against respondents as trustees *de son tort* arose before respondents came into Carolyn's estate following her death. When Frank submitted his amended demand for arbitration in 2014, he alleged that Carolyn *and her alleged co-conspirators, including Aguiar,* had violated the terms of the Trust by transferring the Trust's assets into Carolyn's estate. That respondents thereafter came to fully control the contested assets under the terms of Carolyn's will following her death did not create a new and distinct cause of action as far as the Stuart Trust was concerned. Thus, the proposed claim accrued no later than March 2014. Accordingly, even if the four-year statute of limitations applies, the claim became time-barred in March 2019, five months before Frank filed his Section 850 Petition.

Insofar as *King, supra,* 178 Cal.App.4th 1488 suggests that respondents are barred from asserting the statute of limitations defense, we decline to follow that case. In the passage Frank relies on, the *King* court was quoting from *England v. Winslow* (1925) 196 Cal. 260 (*England*) which, in turn, was quoting from a treatise on trusts. (See *id.* at pp. 267-268.) Later in the *England* opinion, the high court clarified that "the authorities are uniform in holding that the statute of limitations does not begin to run in favor of such a trustee until there has been a repudiation of his trust." (*Id.* at p. 271.) Thus, *England* does not stand for the proposition that the subject of a trustee *son de tort* claim is categorically barred from asserting a defense based on the statute of limitations.

### 4. Claim for Accounting

Finally, Frank proposes to state an amended claim for an accounting as to Warner. Frank fails to state any facts upon which a demand for an accounting could be made against Warner. Warner has never been appointed as a trustee of the Stuart Trust. Moreover, the deadline to contest an account or bring a claim for breach of trust based upon the account is three years under Probate Code section 16460, subdivision (a). Carolyn filed an account in American Arbitration Proceeding 01-14-0001-5247 on February 19, 2016. Frank's Section 850 Petition was not filed until August 12, 2019. Even assuming that a section 850 petition is a proper vehicle for challenging the accounting, his petition is time-barred.

## III.  DISPOSITION

The order sustaining respondents' demurrers to the petition for return of trust property under Probate Code section 850 is affirmed. Costs are awarded to respondents.

WISS, J.*

WE CONCUR:

MARGULIES, ACTING PJ.

BANKE, J.

A161192

---